In the United States Bankruptcy Court
Eastern District of New York

_____

In the Matter of:                                    CHAPTER 11 CASE No. "19-43516-ess"
Michael Krichevsky
          Debtor In Possession

_____

Michael Krichevsky,

        Plaintiff Under Duress, DIP
vs.
                              ADVERSARY PROCEEDING No.

US Bank, NA;
425 Walnut Street
Cincinnati, OH 45202-3923.

Wells Fargo Bank, NA;
101 N. Phillips Ave.
Sioux Falls, SD 57104

Wells Fargo Home Mortgage
PO Box 14507
Des Moines, IA 50306

Kelly Duncan, individual
Unknown address
Possible fictitious name

Wells Fargo Home Mortgage
3476 Stateview Blvd
Fort Mill, SC 29715

Stephanie Terese Tautge, individual;                 <u>TRIAL BY JURY DEMANDED</u>
9846 Blaisdell Ave S,
Minneapolis, MN 55420-4809

Daniel V. Edward, individual
Address unknown
Possibly fictitious name

Banc of America Funding Corporation
Possibly defunct entity
214 N Tryon Street
Charlotte, NC 28202

VERIPRISE PROCESSING SOLUTIONS LLC
750 Hwy 121 Byp Ste 100
Lewisville, TX 75067

Charice Lenise Gladden, individual;
1136 Constitution Park Blvd,
Rock Hill, SC 29732-3204

WOODS OVIATT GILMAN, LLP;
1900 Bausch & Lomb Place
Rochester, NY 14604

Donald W. O'Brien, Jr., individual;
3271 Abbey Rd,
Canandaigua, NY 14424-1799

Aleksandra K. Fugate, individual;
19 Arborwood Dr.,
Lancaster, NY 14086-4460

Brittany J. Maxon, individual;
383 DOEWOOD LN,
ROCHESTER, NY 14606-3359

David Bruce Wildermuth, individual;
8 Devon Woods Close,
Amagansett, NY 11930-2439

Brettanie L. Hart Saxton, individual;
4846Saint Paul Blvd,
Rochester, NY14617-1744

Victoria E. Munian, individual;
2255 Peachtree Rd Ne Unit526,
Atlanta, GA 30309-1170

Michael Thomas Jablonski, individual;
784 ATLANTIC AVE,
ROCHESTER, NY 14609-7453

Miranda L. Sharlette a/k/a Miranda Jakubec, individual
270 S Goodman St. Apt 100
Rochester, NY 14607-2755

FRENKEL LAMBERT WEISS WEISMAN GORDON, LLP
53 Gibson St.
Bay Shore, NY 11706

Barry M. Weiss, individual
Uddress unknown

PROVEST, LLC;
320 Carleton Avenue, Suite 2600
Central Islip. NY 1172

Woody Dorsonne, individual;
146 Spencer St., Ste 4008,
Brooklyn, NY 11205-5628

REED SMITH LLP

599 Lexington Avenue
New York, New York 10022

Natsayi Mawere, individual
136 W 15th St,
New York, NY, 10011

Jennifer L. Achilles, individual
1400 5th Ave Apt Thb2,
New York, NY 10026-2588

Estate of diseased Noach Dear, individual;
Address unknown

Shmuel Taub, individual;
1363 E 31ST ST,
BROOKLYN, NY 11210-5414

Steven J. Baum, P.C.
220 Northpointe Pkwy
Amherst, NY 14228

Steven J. Baum, individual
110 Via Quantera,
Palm Beach Gardens, FL 33418-6217

Elpiniki M. Bechakas; individual;
20MuegelRd,
East Amherst, NY, the  14051-1605

Jane and John Doe 1-100, individuals
Names to be discovered

               Defendants.

_____

## INTRODUCTION

"I don't want to put a family on the street unless it's legitimate," Justice Arthur M. Schack

I, Michael Krichevsky, Debtor In Possession (DIP), self-governing man in opposition to proof of claim, violation of bankruptcy stay by Defendants in concert respectfully aver as follows below:

I have a God given rights to Liberty, Property and Pursuit of Happiness. To defend these rights from violation, I have been litigating against defendants and investigating public corruption as whistleblower and victim since 2009.

In 2009, Wells Fargo Bank, NA, US Bank NA and its alleged attorneys had begun malicious

prosecutions against me through foreclosures in State and Federal courts, which continue to present. Not even one year has passed between each malicious prosecution and abuse of process.

The averments in this complaint based upon my firsthand knowledge, research, court experiences in foreclosure litigation involving Wells Fargo Bank, NA, US Bank, NA, their subsidiaries and/or agents from 2009. These averments based upon information, documentary evidence provided to me by others in my capacity as investigator and whistleblower; and upon inferences and conclusions reached from said information and belief.

In fact, I am the only one amongst Defendants involved in this action with *first-hand knowledge* able lawfully sign *non-hearsay, admissible Affidavit or Complaint* without intention to mislead the court or judge, harass opponent and without creating perjury and/or fraud on the court.

This is an action for actual, statutory and punitive damages caused to me by defendants in concert pursuant to Sections 105, 362, 501, 502, 503, 505 and 506 of the Bankruptcy Code and Rules 3001, 7001(1), 7001(2), 7001(7), 7001(8) and 7001(9) of the Federal Rules of Bankruptcy Procedure to determine the lawful interest of the US Bank, NA, if any, in the residential real estate development of the DIP and to determine the amount of the allowed secured claim, if any.

The gist of this complaint is that after US Bank's or other shadow entity's double profit or double recovery from mortgage insurance of an alleged debt from an alleged default, US Bank and/or other shadow entity/ies try to get even more, but now from me by using criminal, fraudulent means. All criminal acts by all defendants constitute Obstruction of Justice, Treason against United States and The People they have sworn to serve and protect.

This complaint unravels fraud upon the court by officers of the court and I, perpetrated by Defendants using a) after-the-fact fabrication of notes, mortgages, assignments, affidavits and affirmations to assist the fraud; and b) fraudulent representations to the court and I of names, identities and authority of individual Defendants to sign numerous documents, make and sign assignments, affidavits, affirmations and declarations in support of said fraud; and c) fraudulent representations to the court about the owner, creditor and real party in interest; and d) fraudulent representations to the court about note's chain of title or chain of transfers

concerning my notes and mortgages.

It is outrageous how this bankruptcy Chapter 11 case is going. I have not seen this in any other bankruptcy case. This evidently shows how wrong and corrupt participants herein there are. Apparently, it takes two high profile, international law firms to litigate with me. Evidently, it takes special, skillful fraud and harass conquer just a pro se guy, wow! Discrimination against pro se here in full view by evident inaction of US Trustees and Federal Judge while witnessing this fraud and harassment.

I am suing them for the damages they caused to me, to my property and for value of my time of life, which cannot be ever replenished. They were saying and fabricating documents they sought were necessary to "win" in court and plunder my estate.

Particularly, I seek relief herein for Defendants' multiple violations of my Constitutional and other legal rights in connection with their illegal foreclosures because the law prohibits violation of criminal laws in order to enforce civil law. I am entitled to relief for Defendants' unjustified and illegal actions, which violated federal and state statutes.

Finally, I got tired of "diving into a rabbit holes" so to speak every time Defendants started a new claim against me in state courts. Finally, I have concluded that whatever the case might be, they obviously hiding something and that they have no lawful claim against me – otherwise they would have produced evidence of standing and have succeeded honorably, on the merits.

This lawsuit also seeks an order declaring lien, assignments void and to expunge them from the record of NYC Register on my property per 11 U.S.C. § 506(d).

## JURISDICTION

1.    This action arises, inter alia, out of Defendants' repeated pre-petition and still continuing violations of bankruptcy stay, my Constitutional and other legal rights under color of law pursuant to 42 USC §§1981 – 1988 and 18 USC §242.

2.    This action arises out of never ending violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") by these Defendants in concert, their agents or employees in their concerted, illegal efforts to extort an alleged consumer debt from me.

3.      The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§157(a)-(b) and 1334(b). Under 28 U.S.C. § 157(b)(2)(B) this is a core proceeding.

4.      Jurisdiction is conferred on this Court pursuant to the provisions of Title 28 U.S.C. §1334 in that this proceeding arises in and is related to the above-captioned Chapter 11 case under Title 11 and concerns the property of DIP in this case.

5.      Jurisdiction is conferred on this Court pursuant to the U.S. Constitution, Article 6, Clause 2, which states, "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land; **and Judges in every State shall be bound thereby**, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. (The Supremacy Clause of the U.S. Constitution) [**emphasis is mine**]

6.      This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and per 18 U.S.C. § 1964(c) (RICO).

7.      This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. §1367.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and more specifically, the wrongdoing and transactions occurred here and Defendants transact business here.

9.      This case is brought within one year of the never ending violations in compliance with the statute of limitations per 15 U.S.C. §1692k(d) and per equitable tolling doctrine.

10.     Other causes of actions, such as malicious prosecution and fraud, also equitably tolled due to continuing violation doctrine, recent discoveries of fraud and due to my continuing injury in fact.

PARTIES

11.     I, Plaintiff, Michael Krichevsky, debtor in possession (DIP, I or Michael) of above shown Chapter 11 case. I am individual consumer according to FDCPA. From 2005, I was the lawful owner and from 2008 developer of residential real estate project located in this district, which is the property of this bankruptcy estate in this Chapter 11 estate. My properties and business located in the Eastern District of New York at

4219 and 4221 Atlantic Ave., Brooklyn, NY. As a consumer in the bankruptcy court per Chapter 11 case, I am allegedly obligated to pay a debt to US Bank, NA. as creditor, which I vigorously oppose.

<u>Entity Defendants</u>

12.    The following facts drawn from several USB's legal documents and pleadings in several foreclosure actions against my property starting from 2009 until present.

13.    All Defendants herein, acted under color of law of the State of New York and under color of Bankruptcy law.

14.    US Bank, NA (USB) is a national banking association organized under the laws of United States. USB, by implication, is acting as a trustee for a securitized trust Banc of America Funding Corporation, which by implication holds Mortgage Pass-Through Certificates, Series 2006-F, which trust by implication, was securitized in 2006.

15.    I say "by implication" because only caption (see **Exhibit 1**) implies that USB is trustee of some trust, which is not a sworn statement under oath by any officer or employee of USB to prove standing in this court.

16.    USB never averred 1) when it became a trustee, 2) who appointed or hired it as trustee, 3) never produced in the court any corporate resolution from implied trust showing USB's authority to act as trustee of that implied trust, 4) never averred when it became owner and/or holder of the notes and mortgages it attached to several court documents as evidence against me, 5) never averred from who it acquired said notes and mortgages, thereby failing to prove a chain of title of said notes and mortgages. And, to hit a final nail in the head, USB never averred that it is acting as trustee of the "following named trust" in any affidavit signed by any officer or employee of USB.

17.    In fact, there was no document from or by USB in 2009, 2014, 2016 and 2019foreclosure cases in state courts to prove that USB indeed participated in those actions.

18.    From 2009 until present, per FDCPA, USB by its numerous alleged attorneys and law firms in state and federal courts and to Michael that it is a debt collector attempting to collect a debt for implied trust.

19.    After its two failed attempts to prove in state courts that Michael owes USB said debt, in 2016, USB, WF and WOODS's attorneys with deliberate disregard to their knowledge of illegality of their actions,

brought third foreclosure action in state court as a debt collector on that alleged debt.

20. These trespassers knew that their action to collect an alleged debt was time-barred in 2015, which was violation of FDCPA section 1692(e).

21. USB continued alleged debt collection of this time-barred, alleged debt by harassing Michael and by filing two Proofs of Claim in this court even though Michael notified it's attorneys that regardless of the merits of USB claims against Michel, the collection of any debt is time-barred from 2015.

22. USB, particularly, alleges by implication in this bankruptcy court that my alleged debt was securitized and is a part of certificates Series 2006-F that it owns and holds as trustee.

23. However, every attorney that allegedly represented USB from 2009 and until present arrogantly refused to *answer in writing* to the court and I who is or are the owner(s) of those certificates and which "trust" owns and/or holds them.

24. Stated differently, no attorney neither in first, 2009th foreclosure lawsuit, nor attorney in subsequent lawsuits and claims disclosed on the record the name of the creditor (certificates' owner) whom I allegedly owed money.

25. I am entitled to get this information by operation of law in order to be sued by USB.

26. This lawsuit will compel USB to give this information to me or have its Proof of Claim stricken and trespassers sanctioned.

27. Also, because I had no contractual relationship with this bank, its Defendant attorneys per New York law had a legal duty to explain to me why this bank is foreclosing on my property, but again they arrogantly refused to explain connection between my alleged by them default and my ownership of property.

28. Upon this information and belief, I negatively inferred that USB is not the creditor, but aided and abetted attorneys' wrongdoing against me by "renting" its name to undisclosed third parties-intermeddlers or interlopers in conspiracy to create an illusion in court of a lawful creditor, USB.

29. Alternatively, undisclosed third parties-intermeddlers or interlopers used and continue to use US Bank NA, "as trustee" name without authority from USB. If that is the case, this lawsuit would compel the USB to state its true role in these foreclosures on the record.

30.    Wells Fargo Bank, NA (WF) is federally chartered bank. From 2009 until present, per FDCPA, WF by its numerous attorneys, none attorneys and law firms stated in state and federal courts, and to Michael that it is a debt collector attempting to collect a debt for implied trust.

31.    WF is Defendant because, upon information and belief derived from Proof of Claim (POC) with supporting exhibits, it used notorious "foreclosure manual" to serve WOODS OVIATT GILMAN, LLP ( WOODS) as client in criminal fraud and conspiracy to defraud United States and I using shadow entity Veriprise Processing Solutions, LLC (VERIPRISE) from California and other states. The copy of first pages in the envelops that contained POC and motion for relief from stay mailed to me by VERIPRISE. Even though the name of "sender" on the envelop is deliberately missing, address search shows "Veriprise" located in several states. **Exhibit** 2 shows (circled) printed lines "CLIENT ID: Woods…" and another line titled "Order Number." "Veriprise" is aider and abettor of the wrongdoings by WF, which are both serving fabricated documents and criminal fraud for WOODS, WF and USB.

*Company Background*

32.    Overall, WF is a debt collector and attempted to collect alleged debt from Michael since 2009 until present.

33.    It is notoriously corrupt criminal enterprise. It is replete with numerous scandals and investigations by state and federal law enforcement authorities from 2009 related to illegal foreclosures, fabrication of documents and forgery of signatures. The latest such scandal is an opening of the millions of accounts without knowledge and consent of its customers. Needless to say, that opening of an account in the bank requires paperwork and signature of the customer. As such, employees of WF opened accounts without paperwork and signatures; and without customers' knowledge and consent.

34.    New York attorney, Linda Tirelli, in Federal lawsuit has unearthed a "foreclosure manual" – the "smoking gun" demonstrating systematic document fabrication at Wells Fargo. She was quoted in the *Wall Street Journal* in connection with her case involving false document submitted to the bankruptcy court on behalf of Deutsche Bank by WF. Because of the above notorious criminality of this organization it lost its

credibility and this court should not take anything its employees and agents are "filing and saying" for granted.

35.   FRENKEL LAMBERT WEISS WEISMAN GORDON, LLP (FRENKEL) is Defendant and co-conspirator connected with US bank, NA, Wells Fargo bank NA, WOODS OVIATT GILMAN, LLP' and Judge Stong's criminal fraud and conspiracy to defraud United States and I.

36.   From 2014 until present, per FDCPA, FRENKEL by its numerous attorneys stated in state and federal courts, and to Michael that it is a debt collector attempting to collect a debt for implied trust.

37.   In 2015, during foreclosure litigation in State court FRENKEL filed motion to dismiss foreclosure against me while I requested a jury trial.

38.   I had an option to oppose their motion to dismiss and proceed to trial – where I would have exposed *their knowledge* of Wells Fargo's fabricated note, mortgage and assignments. At that time, during a hearing their attorney pleaded to me that I do not oppose their motion to dismiss foreclosure and that I let them "save their face" under promise that their client will never bother me again.

39.   Upon information and belief, FRENKEL immediately thereafter sold or transferred their fictitious claim against me together with fabricated note, mortgage, assignments and their full "in house" litigation file to WOODS OVIATT GILMAN, LLP after statute of limitation to collect on the alleged debt has run. More on statute of limitations, I show below.

40.   FRENKEL with its attorneys act as a "hub-and-spoke" of conspiracy to defraud United States and I. See *United States v. Borelli*, 336 F. 2d 376 (1964): "Courts often conceptualize single conspiracies using either a "chain" or a "hub-and-spoke" metaphor."

41.   WOODS OVIATT GILMAN, LLP (WOODS) is international foreclosure mill, not a professional attorney's entity under New York law.

42.   Upon information and belief, WOODS connected to international bankers (Federal Reserve Bank) and Judge Stong and/or her husband, and therefore is in violation of Foreign Agents Registration Act.

43.   From 2016 until present, per FDCPA, WOODS by its numerous attorneys stated in state and federal courts, and to Michael that it is a debt collector attempting to collect a debt for implied trust.

44.    Besides the FDCPA violations, WOODS is defendant here because of its actions as a party-claimant – not as attorney firm representing a client. In fact, I am confident that this partnership is a corrupt bulk "debt buyer" acting Pro Se under the guise of representing a client – when in reality WOODS is a client.

45.    This partnership with its attorneys act as a "hub-and-spoke" of conspiracy to defraud United States and I. See *United States v. Borelli*, 336 F. 2d 376 (1964): "Courts often conceptualize single conspiracies using either a "chain" or a "hub-and-spoke" metaphor."

46.    WOODS is a criminal enterprise because its attorneys knew that prior state court's foreclosure action against me was voluntarily dismissed in 2015 by USB, WF and its then attorneys, FRENKEL. In addition to this wrongdoing, employed by WOODS attorneys or its employees filed in Kings County Supreme Court and in City Register several false, misleading and fabricated documents containing false, misleading information in violation of criminal Federal and State laws.

47.    Upon information and belief, WOODS connected to international bankers (Federal Reserve Bank), Judge Stong and/or her husband, Federal Reserve Bank's Attorney, and therefore are all in violation of Foreign Agents Registration Act.

48.    Names of individual Defendants employed by WOODS listed below.

49.    Law firm REED SMITH LLP (REED) is a limited liability partnership, which employs attorney Natsayi Mawere. REED is engaged in Obstruction of Administration of Justice in this court by covering up wrongdoing of WOODS and by harassing me.

50.    From 2020 until present, per FDCPA, REED by Natsayi Mawere stated bankruptcy court, and to Michael that it is a debt collector attempting to collect a debt for implied trust.

51.    Upon information and belief, PROVEST, LLC (PROVEST) is limited liability company, which employs licensed process servers on behalf of foreclosure mills such as WOODS and fabricates documents for these foreclosure mills.

52.    In my Chapter 11 case, this company served me by mail two false and misleading the court documents used by PROVEST and/or WOODS to electronically file POC and motion for relief from stay.

53.    Name of individual Defendant(s) employed by PROVEST will be discovered in this lawsuit.

54.    USB, WF, attorney's firms and individual attorneys-defendants from these firms will be jointly called "Trespassers."

<u>Individual Defendants</u>

55.    As a preliminary note, all individual attorneys-defendants or non attorneys knowingly made, used, or caused to be made or used, a false court record(s) and/or sworn material statement(s) to a false or fraudulent claim against me.

56.    The individuals named herein have chosen to ignore exculpatory evidence and established law in their actions to "willfully, unlawfully and knowingly" harm me through harassment and/or fraud on the court by officers of the court.

57.    All individual attorneys-defendants committed and continue to commit fraud and conspiracy to defraud, harassment in the second degree under New York Penal §240.26 and aggravated harassment per §240.30.

58.    All Defendants in concert committed fraud against their own, created laws, practices and orders.

59.    All Defendants that have licenses to practice law took the Oath of Office to support and defend Constitution, law, order and to serve people.

60.    However, every one of these defendants made a conscious decision to breach this oath and violate my Constitutional and other rights, such as 42 USC Sec 1981.

61.    I accuse all individual Defendants in conspiracy to Obstruct Justice. Evidentiary facts to support my accusations show that when I pointed Defendants out to falsehoods and forged documents – none of them denied falsehoods and forged documents, they just willfully ignored them.

62.    Alternatively, some unknown to me Defendants from WF, USB or attorney's law firms engaged in counterfeiting securities and submitting them to attorneys in order to start foreclosures, and which names this lawsuit will unravel.

63.    The following facts drawn from several USB's legal documents and pleadings filed in several foreclosure actions against my property starting from 2009 until present.

64.    I sue Elpiniki M. Bechakas, (Bechakas), as individual, for recently discovered fraud upon the court by her as officer of the court and employee of Steven J. Baum, P.C. Fraud was done by creating and signing

VOID, fictitious assignment of mortgage in my 2009 foreclosure case. As I was preparing this complaint and analyzing facts, I discovered that she, most likely, not have created and/or signed said assignment because someone else from the foreclosure mill Steven J. Baum, P.C., most likely, have used her name and forged her signature on said assignment without her knowledge. I needed to rule out this possibility to avoid frivolous pleading. Accordingly, I contacted her current employer and asked to speak with her. I was told that due to the COVID19 she is working from home and I was given her email address.

65.    I sent her email (**Exhibit 1**) with attached copy of assignment of mortgage from my 2009 foreclosure case purportedly signed by her. In this email, I told her that I address her as my witness in litigation case I am working on to cancel and expunge said assignment. I asked her to look at that assignment and tell me whether it was her signature or someone else's.

66.    I sent her two emails.

67.    She failed to reply.

68.    As such, I negatively inferred that it is her signature and she is afraid to admit it or that she is covering up someone else's crime. Regardless, refusal to be a witness in Federal proceeding is Obstruction of Justice. Indeed, if her assignment was lawful, she would not have to be afraid of talking to me. Indeed, why would she not admit that she made it and signed it or that she did not make it or sign it? Her 2009, void assignment is now filed in this bankruptcy court in violation of USC 1001?

69.    I also inferred that she and Steven J. Baum, P.C. created and participated in scam "I assigned your property to myself."

70.    Accordingly, she is a paid-off participant and "spoke" of "hub" of criminal fraud and conspiracy to defraud United States and I.

71.    Steven J. Baum was/is the owner of Steven J. Baum, PC. He was supervisor and co-conspirator with Elpiniki M. Bechakas, WF and USB.

72.    Accordingly, he is a paid-off participant and "spoke" of "hub" of criminal fraud and conspiracy to defraud United States and I.

73.    Stephanie Terese Tautge (Tautge) employed by WF.

74.    She is notorious robo-signor and robo-notary for WF' fabricated paperwork. She created or allowed somebody else to create a rubberstamp with her name, signature and title of "Assistant Secretary" of Mortgage Electronic Registration System, Inc. (MERS) on it.

75.    In reality, she did not work for MERS or was its officer.

76.    Using said rubberstamp she created or allowed somebody else to create and sign for my second foreclosure case so called "CORRECTIVE ASSIGNMENT (**Exhibit 2),** purportedly correcting "scrivener error" of Elpiniki M. Bechakas assignment (**Exhibit 3**).

77.    This assignment (**Exhibit 2**) with her signature on it was never notarized**.**

78.    Instead, she or whoever was creating this fraudulent assignment took a second page with a notary stamp and signature on that page from some other assignment or document, made a copy and attached it to the first page of this fraudulent, void assignment, in violation of New York's notary and criminal laws.

79.    Accordingly, she is a paid-off participant and "spoke" of "hub" of criminal fraud and conspiracy to defraud United States and I.

80.    Daniel V. Edward (Edward) allegedly employed by USB. He purportedly submitted foreclosure information and documentation to WOODS, which was inadmissible as evidence and contained false information, thereby aiding and abetting fraud upon the court by officers of the court causing damage to me.

81.    I sue Shmuel Taub, (Taub) for his role in 2016 illegal foreclosure case against me as referee, thereby aiding and abating fraud upon the court by officers of the court.

82.    Accordingly, he is a paid-off participant and "spoke" of "hub" of criminal fraud and conspiracy to defraud United States and I.

83.    Charice Gladden, (Gladen) is Defendant as employee and "Robo Witness" of WF who purportedly wrote affidavit in support of proof of claim in my 2019 Chapter 11 case.

84.    Upon information and belief derived from public records, she worked for Citibank as Bankruptcy Specialist from September 8, 2015 until April 2, 2019.

85.    Accordingly, she started her work for Wells Fargo less than a year before she signed her affidavit, and therefore could not have any personal knowledge about Wells Fargo Bank records from 2005 or from 2009,

not to mention her lack of qualification as expert witness and forensic examiner to testify by affidavit about authenticity of bank records, note, mortgage and my signature. There was insufficient evidence to support issuance of Court Order to lift stay when motion and POC were submitted to court by attorneys-defendants. But, for her false and misleading the court declaration, motion to lift stay would not been issued by Judge Stong.

86.   Accordingly, she is a paid-off participant and "spoke" of "hub" of criminal fraud and conspiracy to defraud United States and I.

87.   Woody Dorsonne, (Dorsonne), sued by me here for his fraudulent, perjurious affidavit of service as process server in 2016 foreclosure against me by WOODS.

88.   Accordingly, he is a paid-off participant and "spoke" of "hub" of criminal fraud and conspiracy to defraud United States and I.

89.   Donald W. O'Brien, Jr., Esq. (O'Brien) is Defendant as employee and/or managing partner of WOODS OVIATT GILMAN, LLP who supervised and directed all WOODS attorneys involved. Originally, his status was nonparty, but starting from state foreclosure action in 2016 against me, he proved to be a paid-off participant by his concerted, unlawful actions. Donald W. O'Brien, Jr., Esq. is a "spoke" of "hub" of criminal fraud and conspiracy to defraud United States and I.

90.   Aleksandra K. Fugate, Esq., (Fugate) is Defendant as employee and supervisor of bankruptcy department of WOODS OVIATT GILMAN, LLP. Originally, her status was nonparty, but later on, she proved to be a paid-off participant by her concerted, unlawful actions against me. Aleksandra K. Fugate, Esq. is a "spoke" of "hub" of criminal fraud and conspiracy to defraud United States and I.

91.   David Bruce Wildermuth aka David B. Wildermuth, Esq. (Wildermuth) is Defendant as employee of WOODS OVIATT GILMAN, LLP. Originally, his status was nonparty, but starting from state foreclosure action in 2016 against me, he proved to be a paid-off participant by his concerted, unlawful actions against me. David B. Wildermuth, Esq. is a "spoke" of "hub" of criminal fraud and conspiracy to defraud United States and I.

92.   Brittany J. Maxon, Esq. (Maxon) is Defendant as employee of WOODS OVIATT GILMAN, LLP.

Originally, her status was nonparty, but later on, she proved to be a paid-off participant by her concerted, unlawful actions against me. Brittany J. Maxon, Esq. is a "spoke" of "hub" of criminal fraud and conspiracy To defraud United States and I.

93.    Brettanie L. Hart Saxton, (Saxton) is Defendant as employee of WOODS OVIATT GILMAN, LLP. Originally, her status was nonparty, but later on, she proved to be a paid-off participant by her concerted, unlawful actions against me. Brettanie L. Hart Saxton, Esq. is a "spoke" of "hub" of criminal fraud and conspiracy To defraud United States and I.

94.    Victoria E. Munian, (Munian) is Defendant as employee of WOODS OVIATT GILMAN, LLP. Originally, her status was nonparty, but later on, she proved to be a paid-off participant by her concerted, unlawful actions against me. Victoria E. Munian, Esq. is a "spoke" of "hub" of criminal fraud and conspiracy to defraud United States and I.

95.    Michael Thomas Jablonski, (Jablonski) is Defendant as employee of WOODS OVIATT GILMAN, LLP. Originally, her status was nonparty, but later on, she proved to be a paid-off participant by her concerted, unlawful actions against me. Michael Thomas Jablonski, Esq. is a "spoke" of "hub" of criminal fraud and conspiracy To defraud United States and I.

96.    All attorneys from WOODS acted as "spokes" of the WOODS OVIATT GILMAN, LLP (wheel or hub) of "chain" conspiracy against me. See *Bolden v. State*, 410 A. 2d 1085 (1980) where Judge eloquently explained, "A "wheel" conspiracy is shown when a number of people (the spokes) are engaged in similar relationships with the same individual (the hub). The "chain" conspiracy is characterized by different activities carried on with the same subject of a conspiracy in such a manner that each conspirator in a chain-like manner performs a separate function which serves in the accomplishment of the overall conspiracy. *United States v. Perez,* 489 F.2d 511 (5th Cir.1973)." Subject of the fraud and conspiracy to defraud United States and I is to use the court process and judgeship to deprive me of approximately $1,700,000 property and enrich all involved in it as final goal. That would strip me of my working capital, ability to conduct business as real estate developer and ability to employ people. This, in turn, would deprive me of my right to earn a living, pay taxes; and would put me on the federal welfare system for life. In fact, Judge Stong created exactly

the same outcome when she Obstructed Justice to me in related to this bankruptcy case of 2012, which she ended in 2016 in this district, while WOODS simultaneously in 2016 started illegal foreclosure in state court after 6 years of statute of limitation run. This, in turn, prevented me from appealing her Obstruction of Justice by taking away my time, energy and resources to fight WOODS' foreclosure and avoid homelessness. In fact, she is direct cause of this Chapter 11.

97.    Natsayi Mawere, Esq., (Mawere) is employee of REED. She engaged in Obstruction of Administration of Justice in conspiracy with other Defendants. Her status supposed to be nonparty, but she immediately proved to be a paid-off participant by her concerted, unlawful actions against me.

98.    Mawere is a "spoke" of "hub" of criminal fraud and conspiracy to defraud United States and I.

99.    All Attorney-Defendants throughout the history of foreclosure litigation against me at various times knowingly and willfully filed in courts complaints, motions, affirmations, fabricated evidence containing false information. Thereafter, they argued in support of their fraud upon the court by officers of the court.

100.  Jennifer L. Achilles, Esq. (Achilles) is a partner of REED and is supervisor of Mawere. Achilles status supposed to be nonparty, but she immediately proved to be a paid-off participant by her concerted, unlawful actions against me. Achilles is a "spoke" of "hub" of criminal fraud and conspiracy to defraud United States and I.

<u>Introductory statement per FRCP 8 – General Rules of Pleading</u>

101.  A simple foreclosure case that should have been routine and fast became my 11-year nightmare, harassment, malicious prosecutions and human trafficking by forcing Michael to perform free labor in numerous courts from 2009 until today for the benefit of Defendants.

102.  The material facts underlying this complaint are not in dispute by Defendants since they are the ones who averred them and the ones who created legal documents in support of their claims against me.

103.  As preliminary statement, all attorneys please take notice that per "crime-fraud exception" I invoke in this case, no denials, refusal to deny, refusal to admit or produce any exculpatory for me documentation by claiming *attorney-client* privilege will be permitted by law in this court.

104.    **It is my contention so, please, be advised that NOTHING in these pleadings shall serve as my**

**admission that Defendant, WF, has the right to service Michael's mortgage loan. Or that Defendant, USB or any "Trust" actually "owns" or "holds" Michael's original notes or mortgage loan or has a secured interest in Michael's real estate property, or that Michael ever signed any note or mortgage, numerous, different from each other, redacted and competing copies of which Defendants filed in every court and in New York City Register since 2005. Stated differently, it is absurdity to redact and/or fabricate notes and mortgages, and/or forge Michael's signatures, file them in court, and then arrogantly claim that I signed those redacted copies or expect that I admit their authenticity and that I defaulted on those redacted fabrications.**

105.  All times herein are relevant to this complaint and applicable to each Defendant's actions or inactions since 2005 until present. All of you, Trespassers, know exactly when and what you did, did not do or why refused to do your job.

106.  During my 2005 closing of my property located at 4221 Atlantic Ave., Brooklyn, NY, I relied on my closing attorney, followed his directions, never read any documents I signed and was pretty much "least sophisticated consumer." However, I remember that I have signed several "original" notes and mortgages (now I know that it means more money for criminals). Looking at this event 16 years later, I realized that this closing was sham, fraudulent contract, which was also unconscionable, and therefore void for fraud in the inducement.

107.  The following facts are still not admitted, but drawn from New York City Register. I did not approve, verify authenticity of documents before filed, or verified any information contained in those documents. In fact, I was not present when the filing took place, but I know for sure that during my closing, there was no notary and I was not sworn to sign filed mortgage.

108.  Therefore, I contend that if I indeed signed the documents filed, the notary stamp and signature were placed on mortgage after the closing when I left.

109.  In fact, mere filing in City Register is not proof of authenticity of documents, correctness of information on them, or authority to file those documents. See *Merin v. City of New York*, 2016 NY Slip Op 31161 where record shows that City Register's filing is not evidence of fact, authority to file, and subject to fraud:

"**The essential facts underlying the complaint are not in dispute**. Plaintiff is the owner of a private home located at 226-08 141st Avenue in Queens County. She obtained title to the property as sole heir and devisee of the estate of one Ida Hershman. On March 6, 2014, one Darrell Beatty filed a fraudulent Real Property Transfer Report with the City Register indicating a sale of the property in 2013 to him from one Edith Moore and on March 20, 2014 filed a fraudulent deed with the City Register. Thereafter, Beatty broke into the home, changed the locks and took up residency. Upon going to the home to inspect it, plaintiff discovered that the locks had been changed and she called the police to report a burglary. When the NYPD arrived, Beatty, who was present at the premises, produced the fraudulent deed, and the officers refused to arrest Beatty for burglary and left."
[**emphasis mine**]

110.  Therefore, filings of assignments (**Exhibit 2 and Exhibit 3**) in City Register against my property is not evidence of fact, authenticity, authority to file or truth of information in filings.

111.  I also believe (opportunity with motivation existed to support my belief) that Defendants downloaded below stated documents and used them as templates for future fabrications to be used in courts from 2009.

112.  Averred below, are material and relevant to this complaint facts taken from filings in NY City Register of original lender, Fairmont Funding LTD. These filings concern subject property, on which facts USB, WF, its alleged attorneys relied or should have relied in writing of their complaints, sworn affirmations and affidavits since 2009 foreclosure complaint by USB.

113.  According to city register, my signed, original note and mortgage were transferred from FAIRMONT FUNDING LTD, A NEW YORK CORPORATION, located at 1333 60TH STREET, BROOKLYN, NY 11219 to SMI-FAIRMONT FUNDING LTD located at 3910 KIRBY DRIVE SUITE 300 HOUSTON, TX 77098 (see an enlarged  snapshot of RECORDING AND ENDORSEMENT COVER PAGE in city register below):

**PRESENTER:**
ATLANTIC LAND TITLE AND ABSTRACT, LTD. 5417 18TH AVENUE
BROOKLYN, NY 11204
718-331-6400
ATLANTICLTA@AOL.COM (AL2387K)

**RETURN TO:**
SMI-FAIRMONT FUNDING LTD
ATTENTION: LANIECE LAMELL
3910 KIRBY DRIVE SUITE 300
HOUSTON, TX 77098
Loan No. CS1848

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---------|-------|-----|--|------|---------|
| BROOKLYN | 7026 | 53 | Entire Lot | | 4221 ATLANTIC AVENUE |

**Property Type:** 1- 2 FAM WITH ATTCH GAR/OR VACANT LAND

114.

**PARTIES**

**MORTGAGER/BORROWER:**
MICHAEL KRICHEVSKY
120 OCEANA DRIVE W,,
BROOKLYN, NY 11235

**MORTGAGEE/LENDER:**
FAIRMONT FUNDING LTD, A NEW YORK CORPORATION
1333 60TH STREET
BROOKLYN, NY 11219

104. Here is an enlarged snapshot of first page of Michael's Mortgage filed in city register:

**After Recording Return To:**
**SMI-FAIRMONT FUNDING LTD**
**ATTENTION: LANIECE LAMELL**
**3910 KIRBY DRIVE**
**SUITE 300**
**HOUSTON, TEXAS 77098**
**LOAN NO.:** ▮▮▮▮▮
**ESCROW NO.:**
**TITLE NO.:**
**PARCEL NO.:**      [SPACE ABOVE THIS LINE FOR RECORDING DATA]
**MIN NO.: 100294800012018483  MORTGAGE**
105. **WORDS USED OFTEN IN THIS DOCUMENT**
**"Security Instrument."** This document, which is dated <u>**DECEMBER 14**</u>        ,      <u>**2005**</u>    , together with
all Riders to this document, will be called the "Security Instrument."
**"Borrower."**
**MICHAEL KRICHEVSKY,**
whose address is <u>**120 OCEANA DR W**</u>                      sometimes will be called "Borrower" and
sometimes simply "I" or "me."     BROOKLYN,
**"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under
the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS.
**"Lender."**
**FAIRMONT FUNDING LTD, A NEW YORK CORPORATION**
will be called "Lender." Lender is a corporation or association which exists under the laws of <u>**NEW YORK**</u>
    . Lender's address is
<u>**1333 60TH STREET 2ND FLOOR; BROOKLYN, NEW YORK 11219**</u>    .
**"Note."** The note signed by Borrower and dated <u>**DECEMBER 14, 2005**</u>. will be called the
"Note." The Note states that I owe Lender
<u>**SEVEN HUNDRED FORTY SEVEN THOUSAND SIX HUNDRED AND 00/100 --**</u>
Dollars (U.S. $      <u>**747,600.00**</u>    ) plus interest and other amounts that may be payable. I have promised to
pay this debt in Periodic Payments and to pay the debt in full by <u>**JANUARY**</u>      <u>**01**</u> , <u>**2036**</u>    .

106. As can be seen from ¶¶ 103 and 104, Michael's mortgage loan was assigned number "Loan No.

CS1848" and MERS MIN NO.: 100294800012018483, per ¶ (C), which reads:

**"(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the
laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888)
679-MERS."

107.  At this point, this Honorable Court should take mandatory judicial notice that MERS address is P.O. Box 2026, Flint, MI 48501-2026, which will be material and relevant fact in impeachment of deliberately false statements in purported assignment of mortgage by the Defendant Elpiniki M. Bechakas.

108.  This mortgage agreement was subject to Personal Mortgage Insurance (PMI) per paragraph (O):

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

109.  This mortgage agreement was subject to RESPA, which evidenced by paragraph (Q):

**"(Q)  "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

110.  This mortgage agreement further states on page 10:

**"If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "loss reserve" as a substitute for the Mortgage Insurance coverage.** I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). **Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. "**

"Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note."

"Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed."

"These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).
As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a **portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.** If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:
**Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund. Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such**

**cancellation or termination.**

111.  The conclusion of these statements in the agreement is that payments from Michael to Lender included mortgage insurance payments to reimburse Lender or debt holder if Michael will not pay as promised and debt holder will incur loss of principal or other loss. As can be seen from these filings, Fairmont Funding LTD (Lender) on 12/14/2005 sold and transferred its right to note and mortgage to SMI-FAIRMONT FUNDING LTD of Texas and became just the "Loan Servicer" per paragraph 20.

**Trespassers knew that their claims rebutted by the past – one cannot give something that one does not have – but Trespassers, been white color criminals, did not care.**

112.  Unfortunately, what I know today, I did not know in 2005 or 2009.

113.  Since 2009 until present, Defendants in concert harassed me, maliciously prosecuted me, violated my Constitutional rights, rights to privacy and other rights such as the right to make a living and pursue happiness – all under pretext of collecting consumer debt from me. But, why would they violate the law and my rights to collect consumer debt?" Exactly, good question! And the answer is, by the negative inference, without those violations they knew that they would never win by acting honestly.

114.  For about 11 years, I was trying to figure out why Defendants, supposedly having a lawful claim against me, could not come to court with straight face and win or lose it honorably. Why, in order for Trespassers to win against pro se litigant, they needed to resort to fraud and fabrication of evidence in support of their supposedly lawful claim against me? Why Defendant attorneys knowingly and willingly accepted cases against me, in violation of New York criminal law and attorney's ethics rules, and began doing fraud, perjury and evidence fabrication in order to win in court? Why judge Noach Dear, in deliberate disregard to truth, falsity of attorneys affirmations and evidence laws, in complicity with other Defendants, ignored my motions with exhibits unraveling fraud and "bended backwards" in order to rule in favor of Defendants on summary judgment against me.

115.  Defendant, Noach Dear, denied my cross-motion to dismiss foreclosure in state court without written findings of fact and conclusion of law – just as Judge Stong did to me in bankruptcy court? This is not coincidence. And, the only reason why they violated my rights and disregarded law I could logically come up was that they all been bribed, and therefore had personal interest in the negative for me outcome.

116.  If Defendants would deny this negative inference, then the Court should compel them to give their honest answer as to why they violated my rights and law for nothing in return.

117.  Circumstantial evidence shows that Defendant banks most likely have two sets of accounting or bookkeeping with double entries, which is why WF and its agents resorted to fabrication of evidence and would not show the second, lawful book.

118.  The complained wrongdoing occurred in connection with the submission of several false, misleading the court and I affidavits, affirmations, fabricated assignments of mortgage with false information, fabricated notes and mortgages in State, Federal courts and in City Register in order to plunder my estate and enrich themselves.

119.  This complaint discusses some, but not all, of the material misrepresentations, fraud, fabrication of evidence and perjury as there are so many that it will be hard to follow each. However, main violations of law making each court proceeding void by reason of at least one violation of law and order by Defendants, I will present herein.

**<u>Short, Relevant Factual and Procedural History</u>**

120.  All relevant times herein, start from 2005 and continue to present.

*Notice to the Court and US Trustees of Uncontested Exculpatory Facts or Evidence in my favor.*

121.  In 2009, USB, its alleged servicer, WF, and their alleged attorneys, Steven J. Baum, P.C., in conspiracy with process servers, filed foreclosure complaint against me claiming that I defaulted on loan contract.

122.  Said complaint – obvious boilerplate – signed by attorney, Michael J. Wrona contained, amongst other things, materially false representations to the court and Michael, to wit:

"FIRST: Plaintiff is a national banking association … and having its principal place of business in **Cincinnati, OH**, and the **owner and holder of a note and mortgage** being foreclosed.
The **mortgage was subsequently assigned** to US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR. MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-F by assignment dated the 25th day of August, 2009 and sent for recording in the Office of the Clerk of Kings County.
FIFTH: That the Defendant(s) MICHAEL KRICHEVSKY so named, has/have failed to comply with the conditions of the mortgage and note by failing to pay principal and interest and/or taxes, assessments, water rates, insurance premiums, escrow and/or other charges that came due and payable on the 1st day of May, 2009 as more fully set forth below. Accordingly, Plaintiff elects to call due the entire amount secured by the mortgage.
SIXTH: **There is now due and owing on said mortgage** the following amounts:
Principal balance: $746,256,13

Interest Rate: *6.5%*
Date interest accrues from: April 1,2009
Escrow balance: $160.68
Late charges: $323.36
Inspection fees: $15.00"

123.   The caption of said complaint contained the following:

"US BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 20G6-F
3476 Stateview Boulevard
Fort Mill, SC 29715"

124.   By implication, the address of USB was at "3476 Stateview Boulevard, **Fort Mill, SC** 29715," which

was in immediate contradiction to the address of USB at "**Cincinnati, OH**" in the body of the complaint.

125.   This obvious contradiction made one of those addresses false and misleading the court and Michael.

126.   In fact, it did mislead the court and Michael because it turned out that this address "3476 Stateview

Boulevard, **Fort Mill, SC** 29715" belonged to WF, alleged servicer, who, upon information and belief, hired

and paid attorneys from Steven J. Baum, P.C. to start foreclosure by claiming that Steven J. Baum, P.C

represents USB when it wasn't true, in violation of NY CPLR §322(a), NY Judiciary Law §487 and NYRPC

governing attorneys.

127.   The statement that USB is "**owner and holder of a note and mortgage**" was in immediate

contradiction to the statement that USB is "TRUSTEE FOR MORTGAGE PASS-THROUGH

CERTIFICATES, SERIES 20G6-F," which is implied trust that must have been "**owner and holder of a note**

**and mortgage**" while USB must have been the *agent* of implied securitized trust.

128.   In addition to the above, the body of the complaint failed to plead that USB is acting as trustee and

failed to plead information about of which named trust USB is an agent.

**General definition of perjury is making two sworn statements of material fact, which immediately**
**contradict each other**

129.   Attorney, Michael Wrona, committed perjury by verifying his complaint for USB and signing attorney's

affirmation in support of his complaint.

130.   At the bottom of the summons it was written, "The law firm of Steven J. Baum, P.C. and the attorneys

whom it employs are debt collectors who are attempting to collect a debt. Any information obtained by them,

will be used for that purpose.

131.  That statement implied that attorneys would use due diligence and investigate facts their alleged client, USB, would submit to them before suing Michael.

**Future Impeaches and unravels the Past**

132.  With deliberate disregard of truth and falsity of statements, Steven J. Baum, P.C. and its attorneys falsely represented to the court and Michael that Steven J. Baum, P.C. lawfully represents USB when in fact they knew that they did not and could not lawfully represent USB because of the following.

133.  Attached, as **Exhibit 4,** is my recent search of MERS database (in www.mers-servicerid.org), which shows that Fairmont Funding, LTD is an investor in my notes and mortgage, which means "as of today, within 16 years" Fairmont Funding LTD is still the Lender, Creditor and "the owner and holder of a note and mortgage being foreclosed."

134.  As such, I concluded that Steven J. Baum, P.C. and Elpiniki M. Bechakas knew that information before making assignment of mortgage and starting foreclosure in 2009.

135.  Unfortunately, before this year, I did not know that I can search MERS database without been a registered user with a password as member bank. Alternatively, MERS could have only recently (in 2019) allowed general public to use its database without membership, registration and password.

136.  Averments below made upon information and belief, drown from **Exhibit 4** and other circumstantial evidence mentioned above

137.  Steven J. Baum, P.C. and its attorneys deliberately failed to attach a copy of mortgage, note and assignment to the 2009 complaint in order not to alert and to deceive the court and I that their foreclosure is illegal.

138.  Indeed, if investor in my notes and mortgage was Fairmont Funding, LTD, there was no securitization, securitized trust, and of course no USB as trustee in 2009 foreclosure action.

139.  Said complaint was never served on me in order to obtain default judgment against me.

140.  Affidavit of personal service implied that I lived and was served in Manhattan building through my relative, John Krichevsky.

141.  The problem with this affidavit was that it did not contain any apartment number in the huge Manhattan building; neither I nor John Krichevsky lived in that building, and there was no John Krichevsky in my family either.

142.  However, Trespassers knew where I worked in Brooklyn, but deliberately failed to serve me there as my "place of abode."

143.  The second affidavit of personal service on me stated that I was personally served at 4221 Atlantic Ave., Brooklyn, NY by attachment of the summons and complaint to the door of the house. The problem with second affidavit was that there was no door and there was no house to which complaint could be attached.

144.  At that time, said house was under reconstruction and had just a foundation.

145.  Foreclosing party as plaintiff has the burden of proof of service of process and of standing to foreclose.

146.  I successfully rebutted these affidavits of service in court.

147.  No Traverse hearing was asked for by USB's attorneys, Steven J. Baum, P.C., and none took place.

148.  I rebutted presumptions of correctness and validity of plaintiff's name, and its averments in complaint as follows below.

149.  At that time, being ignorant of information in **Exhibit 4**, I only pointed out to Steven J. Baum, P.C. and its attorneys the defects (see ¶ 122 – ¶ 129, and ¶ 150) in their foreclosure complaint, but they ignored me and made no corrections or amendments to this complaint.

150.  I demanded a true identity of USB because its name was grammatically gibberish and misleading the court and I. In ¶ 4 of my motion to dismiss and for sanctions, I wrote:

"4. The Plaintiffs complaint is so vague and ambiguous that I can not reasonably be required to prepare a responsive pleadings because the complaint fails to attach any document to identify who or what "US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-F" is; nor can I determine from the Plaintiffs complaint upon what facts the Plaintiff is claiming to be the real party in interest with legal capacity to pursue this foreclosure action on a promissory note which is required by the New York State Law. Plaintiff in Complaint (Exhibit B) does not affirmatively state when it became the owner of mortgage and note. Nor plaintiff affirmatively states that it is the owner and holder of the mortgage and note. Plaintiff does not state whom I delivered the mortgage and note and who assigned my instruments to them. No assignment, mortgage or note attached to the complaint either."

151.  This, in turn, shifted the burden of proof on USB and its attorneys to come with admissible evidence of correct USB name per CPLR §322 (a) that states: Authority for appearance of attorney in real property action:

"a)  Authority of plaintiff's attorney.   Where the defendant in an action affecting real property has not been served with evidence of the authority of the plaintiff's of the attorney to begin the action, he may move at any time before answering for an order directing the production of such evidence.   Any writing by the plaintiff or his agent requesting the attorney to begin the action or ratifying his conduct of the action on behalf of the plaintiff is prima facie evidence of the attorney's authority."

152.  USB and Steven J. Baum, P.C. intentionally failed to meet the burden by acting professionally incompetent and used contrived ignorance of my demands during court hearings and in my affidavit supporting my motion to dismiss and for sanctions (see ¶ 150).

153.  In short, I denied most of USB material allegations in that complaint and I continued denying them until present.

154.  In the writing of my complaint against Trespassers, I also relied on numerous public information sources and court cases from federal and State courts, which I recently discovered. Some of the sources listed below.

155.  From Wikipedia I gathered the following

(https://en.wikipedia.org/wiki/Emergency_Economic_Stabilization_Act_of_2008):

"The Emergency Economic Stabilization Act of 2008, often called the "bank bailout of 2008," was proposed by Treasury Secretary Henry Paulson, passed by the 110th United States Congress, and signed into law by President George W. Bush. The act became law as part of Public Law 110-343 on October 3, 2008, in the midst of the financial crisis of 2007–08. The law created the $700 billion Troubled Asset Relief Program (TARP) to purchase toxic assets from banks."
"American International Group, Inc., also known as AIG, is an American multinational finance and insurance corporation with operations in more than 80 countries and jurisdictions. During the financial crisis of 2008, the Federal Reserve bailed the company out for $180 billion and assumed control, with the Financial Crisis Inquiry Commission correlating AIG's failure with the mass sales of unhedged insurance. AIG repaid $205 billion to the United States government in 2012.'"

156.  From case *AIG v. Bank of America,* Docket No. 12-1640-cv, in Second Circuit Court of Appeals, I learned the following from 'findings of fact':

"Plaintiffs are American International Group, Inc. ("AIG") and its various subsidiaries, which invested in residential mortgage-backed securities ("RMBSs") that were underwritten, sponsored, or sold by Defendants. Defendants are Bank of America Corporation ("BOA") and subsidiaries…" (including Banc of America Funding Corporation)
"Complaint alleges that Defendants engaged in various fraudulent misrepresentations while underwriting or sponsoring 349 RMBSs, in which Plaintiffs invested approximately $28 billion, eventually suffering large losses when the RMBSs fell into default."

157.  From the case *MATTER OF BANK OF MELLON*, 56 Misc. 3d 210, in NY Supreme Court (2017), I learned the following from "findings of fact":

"In June 2011, The Bank of New York Mellon (the trustee) entered into a settlement agreement on behalf of the covered trusts to resolve allegations that Bank of America Corporation ... breached certain representations and warranties contained in the pooling and servicing agreements (PSAs) or sale and servicing agreements and indentures (collectively the governing agreements)for the covered trusts. Under the settlement agreement, each of the covered trusts is designated to receive a specified portion (an allocable share) of the $8.5 billion settlement payment."

158.  From website of mainstream media company Pro Publica (https://projects.propublica.org/bailout/list) I gathered that in 2008 Wells Fargo Bank, NA collected bailout sum of $25,000,000,000 for alleged homeowners defaults on home loans. Also, US Bancorp, parent company of US Bank, NA collected $6,599,000,000.

*Notice to the Court and US Trustees of Uncontested Exculpatory Facts or Evidence in my favor.*

159.  However, this money was fraudulently obtained from United States and taxpayers, like myself, because no bank had any losses as a result of defaults of homeowners because Banks did not fund any money.

160.  In fact, according to banks' own admissions of securitization of notes and mortgages, investors from Wall Street funded the loans to people.

**It is logical fallacy and legal absurdity to default on fake, fabricated notes and mortgages**

161.  Even if, which is not admitted, and stated only for the sake of argument, I did default on the alleged notes, redacted copies of which were later attached as evidence against me in court, all securitized notes were insured against default by AIG (insurance company) and/or other third parties and/or scheme( including the alleged, fabricated notes, which USB and WF attached to several complaints against me). See *CIFG ASSUR. N. AM., INC. v. Bank of Am., NA*, 2013 NY Slip Op 51565:

"Defendants Bank of America, N.A. (BOA), **Banc of America Funding Corporation (BAFC)**, and Merrill Lynch, Pierce, Fenner& Smith, Inc., formerly known as Banc of America Securities, LLC (BAS) move to dismiss the complaint pursuant to CPLR§§ 3211 (a) (1), and (7), 3016, and 214 (2). Background
**This action concerns two financial guaranty policies CIFG issued in 2006 in which CIFG guaranteed payments to investors on certain tranches of securities issued in two re-resecuritization transactions (re-REMICS).** Re-REMICs are previously securitized residential mortgage backed securities transactions (RMBS) that are re-packaged and re-sold, and are typically comprised of unsold RMBS being held in defendants' inventory of RMBS.
The re-REMICs at issue are **Banc of America Funding 2006**-R1 (BAFC 2006-R1) and **Banc of America Funding 2006**-R2 (BAFC 2006-R2).
In each re-REMIC, **the original RMBS are deposited into a trust, and certificates (the Certificates) representing rights to the cash flows are sold to investors** in private placement transactions. **In order to obtain higher credit ratings for the Certificates, a depositor typically secures financial guaranty insurance, which guarantees the repayment of principal and interest**

on certain tranches of the Certificates. **The depositor then sells** the securities to one or more **underwriters, who market and sellthe securities to investors.**
With respect to BAFC 2006-R1, BOA and non-parties served as originator, BOA served as the seller/sponsor, BAFC andBAMSI served as depositor, BAS served as underwriter, and BOA and other non-parties served as servicer of the original RMBS. [**emphasis mine**]

162.  As a side note, in above action "Banc of America Funding 2006-R1" is *implied name* of securitized

*trust*, which was created in 2006.

**Upon information and belief, drawn from my mortgage and several sources of public information such as case above, my Original Notes, Mortgage and a copy of 2009 Acceleration letter by WF to me were submitted as undisclosed to me "proof of claim" into insurance carrier's claim file of my alleged default. This is why Trespassers always redacted "loan number" and "MIN number" in court filings to avoid been sued by insurance carrier for fraud, but which are still present in City Register's file**

163.  In my case, Trespassers implicated that my "securitized notes" belonged to a trust named as "Banc of

America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-F," which, by implication,

was too created in 2006.

164.  As such, my alleged default have been covered by AIG and/or CIFG ASSUR. N. AM., INC or other

similar entity from Wall Street.

165.  Trespassers knew or should have known about insurance policy claim by lender or owner of the note

and mortgage covering my alleged default, but deceitfully failed to disclose this information to the court and I.

166.  It was a business model on Wall Street to issue Personal Mortgage Insurance (PMI) and other coverage

"in order to obtain higher credit ratings for the Certificates," which a depositor typically secured by financial

guaranty insurance, which in turn guaranteed the repayment of principal and interest."

167.  In addition, investors, trusts and banks later claimed bailouts, deductions of alleged losses and/or credits

as REMICs on their corporate or personal income tax.

168.  Notwithstanding the information in **Exhibit 4**, since USB and WF were reimbursed by United States and

taxpayers for their alleged losses, Trespassers had no right to start any foreclosure because their alleged losses

were already set-off.

*Notice to the Court and US Trustees of Exculpatory Facts, Law and/or Circumstantial Evidence in my favor.*

169.  In USB's 2009 foreclosure complaint against me, it failed and later refused to plead damages as result of

my alleged default.

170. Even if, which is not admitted and stated only for the sake of argument, I indeed defaulted not on their alleged, fabricated note and mortgage (which I denied signing), but on the real notes, USB and WF were not harmed by my alleged default since the alleged defaulted amount was covered as part of these billions of dollars that these banks received from United States and taxpayers like myself.

171. As such, even If I breached contract and did defaulted, USB and WF with no losses, should have no claim in 2009 against my property by operation of contract law. See *Wenger v. Alidad,* 265 AD 2d 322 in NY Appellate Div., 2nd Dept. (1999) where it explained, "While it is undisputed that the defendant Washington Mutual Bank made several errors in regard to the plaintiff's refinancing transaction, the plaintiff cannot prevail on a breach of contract theory unless he sustained actual damages as a natural and probable consequence of such breach."

**It is logical fallacy and legal impossibility to default on non-existing debt and on fabricated notes and mortgage with forged signatures**

*Notice to the Court and US Trustees of Uncontested Exculpatory Facts and Circumstantial Evidence in my favor.*

172. The Constitution requires pleading injury in order to invoke the jurisdiction of the court. Without injury the party is not entitled to judgment no matter how many assignments presented in court.

173. Controlling precedents in federal court is Warth v Seldin, 422 U.S. 490 (1975), Bell Atl. Corp, v Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed 2d 929 (2007).

174. If USB does not say it have been injured in some way then USB cannot invoke the power of the judicial system, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice..." Ashcroft v Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. ed. 868 (2009).

175. "To survive a motion to dismiss, a plaintiff must allege "more than labels [e.g. "owner and holder"] and conclusion, and a formulaic recitation of the elements of a cause of action will not do..." Bell Atl. Corp, v Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed 2d 929 (2007).

176. During my prior litigation in State courts, I pointed out to attorneys of necessity to claim some losses or injury-in-fact in order to plead standing to foreclose.

177.  Damages or loss is a necessary element of cause of action for breach of any contract, including on the loan.

178.  Without damage or loss, Plaintiff fails to state a cause of action for which relief can be granted and complaint must be dismissed with prejudice, unless Plaintiff amends it by claiming damages.

179.  I demanded that attorneys pleaded every element of breach of contract and produce evidentiary proof in support of each element of breach of contract.

180.  I contested the balance due, the identity of the creditor, but trespassers hindered and delayed resolution of these issues. These issues left unresolved from 2009.

181.  This lawsuit will resolve these issues.

182.  Attorneys knew the law, "Injury-in-fact is a necessary element on breach of contract cause of action."

183.  Alerted by me and having enough time and opportunity to correct said complaint(s), USB, WF, and its attorneys from Steven J. Baum, P.C., FRENKEL, WOODS and REED refused to do so, while other attorneys in concert deliberately disregarded prior attorneys' defects in the complaints and their refusal to correct them.

184.  Trespassers in concert, willfully and with deliberate disregard to truth and falsity of their statements under oath filed in courts in several foreclosure complaints, motions with attorneys' affirmations, affidavits, etc. including trespassers' knowledge of fabricated assignments, notes and mortgages with my forged signatures continued harassing me by mailing me said documents and by arguing said false information in court.

185.  Even though in my opposing paperwork I continued to object and alert all defendants about their fraud upon the court by officers of the court and I, trespassers knowingly, in concert failed and refused to address or controvert, upon my demand, my averments and willfully continued litigation in state and federal courts.

186.  The reason why trespassers refused to claim damages in their complaints and motions on the record is to avoid discovery and production of books and records, which I negatively inferred they didn't have.

*Notice to the Court and US Trustees of Uncontested Exculpatory Facts and Circumstantial Evidence in my favor.*

187.  In addition, by filing a foreclosure complaint against me, USB and WF violated bailout settlements with United States.

188.  These banks and its agents did not have genuine note and mortgage to start foreclosure. To overcome this problem, USB or WF, or someone else, but with USB and WF knowledge of said problem, started "after-the-fact" evidence tempering and fabrication of notes and mortgages tailored to deceive the court and I in order to convince us that USB is *lawful* holder of my genuine notes and mortgage in continuing conspiracy and fraud upon the court, United States and I.

189.  My averments above were never controverted or rebutted by any defendant in this action, even though I demanded that they controvert or rebut said averments.

*Notice to the Court and US Trustees of Uncontested Exculpatory Facts and Evidence.*

190.  In 2010, WF was under investigation by State and Federal law enforcement authorities for fraudulent foreclosure practice. Thereafter, WF signed consent judgment and paid fines as part of the settlement with United States and State of New York.

191.  From Washington Post articles "Wells Fargo foreclosure manual under fire," "The manual, reviewed by The Washington Post," outlines steps for obtaining the "missing" document after the bank has initiated foreclosure proceedings. It also lays out what lawyers must do in the event of a "lost note" or if there is no documentation showing the history of who owned the loan – paperwork the bank should already have to foreclose.

**Attorneys knowingly acted in violation of *Warth v. Seldin* and New York State Judiciary law §487, which is a crime of misdemeanor.**

*Notice to the Court and US Trustees of Uncontested Exculpatory Facts and Evidence in my favor.*

192.  Specifically, in my 2009 foreclosure case and subsequent ones, USB, WF and its alleged attorneys, all in concert, relied on attorney, Elpiniki M. Bechakas, who created and/or signed her mortgage assignment (**Exhibit 3**).

193.  In March 14, 2007, Per New York State Banking Department Bulletin, Fairmont Funding, LTD, alleged original lender, surrendered its License to engage in the business of a Mortgage Banker.

194.  As such, on March 14, 2007, Fairmont ceased to exist and I am confident that no evidence to the contrary existed.

195. When Fairmont ceased to exist in 2007, its power of attorney (POA) nominating MERS in any capacity ceased to exist in 2007 too. Accordingly, POA of dissolved entity could not survive nomination of MERS to assign anything.

196. Upon information and belief, Fairmont did not have any assignees or successors either and I am confident that no evidence to the contrary existed.

197. Said assignment contained false information.

198. Said assignment was unauthorized.

199. MERS did not authorize Elpiniki M. Bechakas to create and sign said assignment.

200. Said assignment was fictitious in that it was illegally created to appear as lawful, authorized assignment from MERS, but it was not.

201. At the time of creation of said assignment by Elpiniki M. Bechakas, she was not employee or agent of MERS, or Secretary or Vice President of MERS.

202. In 2009, Elpiniki M. Bechakas was attorney employed by Steven J. Baum, P.C. and/or Pillar Processing Inc. owned by Steven J. Baum, P.C.

203. Even if, which is not admitted and stated only for the sake of argument, Elpiniki M. Bechakas was authorized by MERS to create and sign said assignment, which of course she was not, the assignment was void because it was not in compliance with MERS' manual rules and/or policy of assigning mortgages using MERS computer system.

204. In 2009, at the time of creation of said assignment, MERS, as nominee of Fairmont, did not have authority from Fairmont to assign anything because Fairmont was defunct from 2007 and had neither assignees, nor successors.

205. According to USB, WF and its alleged attorneys from Steven J. Baum, P.C., including Elpiniki M. Bechakas, in 2006, Fairmont sold all its rights to my alleged debt, notes and mortgage into securitized trust holding and owning my alleged notes and mortgage by way of "mortgage-pass-through certificates series 2006 F"(See ¶113).

206. "2006 F" means that securitized trust was created in 2006.

207.  Therefore, Elpiniki M. Bechakas knew or should have known that neither MERS nor Fairmont had any authority to assign anything concerning my title to property without authorization from implied trust, which she did not have.

208.  Said assignment was designed to cover up the fact that USB and WF did not and could not show in court a chain of title from 2005 until 2009 between Fairmont, implied trust and USB.

209.  Said assignment was designed to appear and support mentioned above fabricated notes and mortgage, which USB, WF and its alleged attorneys claimed that I signed.

210.  Alternatively, if alleged securitized trust was the owner and holder of my note and mortgage, there was no reason, and therefore no authorization from said trust to Steven J. Baum, P.C. and Bechakas to assign mortgage from Fairmont to USB, which is why trespassers refused to disclose information about implied trust.

**Future proves past – 2009, 2014, 2016 and 2019 foreclosure lawsuits using fraudulent assignments were illegal – The "I Assigned Your Property To Myself" Scheme and Scam by Trespassers**

211.  The facts pleaded herein, all came from a) those Defendants' documents that they mailed me during the period starting in 2009 and continuing to present; and b) that were filed with the Kings County Supreme Court and City Register from 2009 to present; and c) as compared to the other documents that are matters of public record, and which were filed in the Kings County Supreme Court, New York County Supreme Court from 2009 to 2019; and d) Federal Courts in New York; and e) from numerous websites publishing foreclosure related information.

212.  NOTICE of zero tolerance to the one who will represent Defendants and file motion to dismiss my complaint for failure to state a claim, etc.

213.  With deliberate disregard to knowledge of illegality of their actions, Defendants Steven J. Baum and Elpiniki M. Bechakas conspired in 2009 to fabricate assignment using MERS' name reserved for member banks in order to "boost" credibility of unauthorized by MERS fraudulent assignments in City Register, despite the fact that Elpiniki M. Bechakas and Steven J. Baum have never insured my title, acted as underwriters of my debt, or lent me a penny.

214.  The way this scheme worked discovered and described in already adjudicated and admitted facts in lawsuit *NATIONSTAR MORTGAGE LLC v. PATRICK JOSEPH SORIA, et al,* index No.: 2:18-cv-03041-

DSF-RAO in United States District Court, Central District of California:

"Q: [Y]ou didn't fund a single loan; correct?
A: No. Didn't fund a single loan.
Q: [Y[ou were a complete stranger to this loan; correct?
A: Yeah. Sure. …
Q: [T]he assignment, who drafted it?
A: The assignment deed of trust, I wrote that. …
Q: Were you authorized by anyone other than yourself to assign this deed of trust?
A: No. (From transcript of Patrick Soria, Person Most Knowledgeable for West H&A and Warranted,
Pgs. 171: 11-18; 172: 1-25;86:22-24; 101:24- 25; 253:3-5.)"

**Elpiniki M. Bechakas and Steven J. Baum perpetrated fraud upon the court by officers of the court and committed perjury in court**

215.  As a side note, Patrick Soria was imprisoned for this crime.

216.  Amassing, but true is how easy the scam of USB, WF, Elpiniki M. Bechakas and Steven J. Baum, with intent to enrich themselves, created the assignment of mortgage (**Exhibit 3**) in 2009 foreclosure against me.

217.  If Elpiniki M. Bechakas and Steven J. Baum had authority from MERS and used its computer system, then information in **Exhibit 4** from my recent MERS search would have shown investor's name USB (per assignment) or, at least, some name of securitized trust. However, information in **Exhibit 4** showed Fairmont as "investor," which would be conclusively the lawful owner and holder of note and mortgage.

218.  In contradiction to the false notarized assignment (**see Exhibit 3**) claiming that Elpiniki M. Bechakas assigned my mortgage from Fairmont to USB in 2009, the real record (**Exhibit 4**) still shows that investor is Fairmont.

219.  According to **Exhibit 4,** Elpiniki M. Bechakas never lawfully assigned my mortgage to USB and USB was never the owner and holder of my note and mortgage – contrary to every legal document filed by attorneys in court from 2009 until present time.

220.  Amassing, how easy she "assigned my property to herself" or to other undisclosed, shadow entity using City Register and personal computer.

221.  Fact, attorneys have a duty of due diligence to verify the facts presented by the client.

222.  However, nobody from trespassers asked each other for any authorization from MERS, WF or USB to create assignments, file them in court and City Register.

223.  No trespasser attempted to stop this illegal foreclosures against me or dropped the client.

224.  Therefore, I inferred that trespassers conspired with each other to enrich themselves using false pretenses and corrupted judges Noach Dear and Elizabeth S. Stong.

225.  This assignment was not sent and/or recorded in MERS system using its policy and software program.

226.  According to MERS' check list (Assessment of Compliance with the MERS System Requirement) said assignment was not in compliance, and therefore would not and was not recorded in MERS system.

227.  New York City Register shows the following information regarding purported assignment of mortgage in 2009, **Exhibit 3**:

ASSIGNOR/OLD LENDER:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
3300 SW 34TH AVENUE, SUITE 101.
OCALA, FL 34474

ASSIGNEE/NEW LENDER:
US BANK NATIONAL ASSOCIATION
180 EAST 5TH STREET
ST. PAUL, MN 55101

PARTIES
ASSIGNOR/OLD LENDER:
FAIRMONT FUNDING LTD
3300 SW 34TH AVENUE, SUITE 101
OCALA, FL 34474


228.  Upon information and belief derived from other court cases and per my personal investigation neither MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., nor FAIRMONT FUNDING LTD were located at the same Florida's address.

229.  Upon information and belief discussed above, my case was on a class member list, which law enforcement reviewed since Steven J. Baum, P.C. abandoned foreclosure against me in 2010.

230.  Particularly, in numerous cases that Steven J. Baum, P.C. handled and in my case, at that time, undisclosed employees from said firm permitted and rented their names to unidentified people who were fabricating, inter alia, notarized assignments and used said employee name to sign those assignments. Investigation revealed that one such employee, Elpiniki M. Bechakas Esq., turned out to be the attorney of Steven J. Baum, P.C. and Pillar Processing LLC while falsely claiming that she is Assistant Secretary and Vice President" of MERS.

231.  She or other employees of Steven J. Baum, P.C. and Pillar Processing LLC using her name created and notarized countless fraudulent assignments including assignment of my mortgage.

232.  Below is a snapshot of a copy of MERS CHECKLIST required to be used in order to create a lawful, authorized assignment. This check list unravels the fraud in creation of assignment purportedly made by Elpiniki Bechakas. This check list shows that this purported assignment of my mortgage was not in compliance with MERSCORP operating manual.

233.  Said assignment did not have any mandatory, identifiable by MERS MIN number, and therefore incriminate itself and void.

234.  This checklist suggests that assignment in question was not registered and made using MERS database and its proprietary software preparation system.

235.  Creation of this assignment by Bechakas is outright criminal fabrication of securities.

236.  I took the Liberty to fill in this form on behalf of imaginary Elpiniki Bechakas to demonstrate this criminal fraud. This is what I show is wrong with her alleged assignment:

## "ASSIGNMENT FROM MERS CHECKLIST

Member Name: Org ID: **MISSING**

MERSCORP Holdings Integrator: **MISSING**

In what state(s) will this assignment be used? New York

**Assessment of compliance with the MERs® system requirements:**

| # | Review Item | YES - compl | NO - does |
|---|---|---|---|
| 1 | The assignment contains a MIN (or the location for the MIN is evident). | | NO |
| 2 | The assignment contains the SIS Number (888-679-6377 or 888-679-MERS). | | NO |
| 3 | (If the assignment contains an address for MERS) The address for MERS is P.O. Box 2026, Flint, MI 48501-2026. | | NO |
| 4 | MERS's name is spelled out as "Mortgage Electronic Registration Systems, Inc." | | |
| 5 | MERS is referred to as mortgagee (if SI is a mortgage), beneficiary (if SI is a deed of trust), or grantee (if SI is a security deed). | | NO |
| 6 | If MERS is referred to as a nominee, the language "its successors and assigns" appears after the named lender. | | |
| 7 | MERS is not referred to as any of the following: servicer, lender, investor, beneficial owner, note owner, trustee, or financial institution. | | NO |
| 8 | The assignment does not contain note transfer language (e.g. "together with the note/indebtedness"). | | |
| 9 | The assignment does not contain an effective date differing from the date of | | |
| 10 | The assignment does not use the word "sells" to describe the action being taken | | |

| 11 | The assignment does not refer to the interest being assigned by MERS as the "beneficial interest." | | |
|----|---|---|---|
| 12 | The assignment is prepared for signature by an Assistant Secretary, Assistant Vice President or Vice President of MERS. | | NO |

*If assignment is for use in **indiana, Pennsylvania, New York or Mississippi**, replace number 3 with:

| # | Review Item | YES - compl | NO - does |
|---|---|---|---|
| 3 | The address for MERS is 1901 E. Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026. | | NO |

*If the assignment is for use in **Washington, Oregon or Montana**, replace number 5 with:

| # | Review Item | YES - comp | NO - does |
|---|---|---|---|
| 5 | MERS is not referred to as beneficiary, but is instead referred to as nominee of the beneficiary and beneficiary's successors and assigns. | | |

Additional Comments by integrator:

DISCLAIMER: MERSCORP Holdings, Inc. and Mortgage Electronic Registration Systems, Inc. make no representations, covenants or warranties regarding the legal enforceability or effect of the document(s) to which this review pertains. This is solely a review for compliance with the requirements of the MERS® System, which are found in the MERS® System Rules of Membership and MERS® System Procedures Manual. The results of this review notwithstanding, each MERS® System member is responsible for ensuring that its documents comply with the MERS® System requirements."

237.  Using this form and comparing assignment in question, I have found at least 9 defects, which make me to infer that purported assignment a) was not made by "Member Name: Org ID" as it is **MISSING** on assignment; and b) MERSCORP Holdings Integrator is **MISSING.** Accordingly no "integrator" participated in this assignment.

238.  In addition, I have counted 7 "NO" when even one "NO" would make assignment defective and void if it was done officially with MERS approval and registration in its database.

239.  Obviously, Elpiniki Bechakas did not know that if assignment made for use in New York, MERS' address on assignment should be "1901 E. Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026," instead of fictitious 3300 SW 34th Ave, suite 101, Ocala, FL 34474 used by her.

240.  Bechakas did not make her assignment using MERS system.

241.  These defects in assignment suggest that Elpiniki Bechakas or other individual a) was not authorized by MERS to do my assignment, b) Bechakas did not know how to make a real assignment, hence so many

defects in fabrication of it, and c) MERS' name on assignment was used without its knowledge to create a fraud upon the court and I by Steven J. Baum, P.C and its attorneys.

242. Instead of routinely complying with CPLR §322 (a) and continue foreclosure action, Steven J. Baum, P.C. went silent for about 2 years.

243. Steven J. Baum, P.C. did not voluntarily serve me with "Any writing by the plaintiff or his agent requesting the attorney to begin the action or ratifying his conduct of the action on behalf of the plaintiff (purportedly USB).

244. Steven J. Baum, P.C. refused to provide this evidence.

245. Indeed, all I asked of Steven J. Baum, P.C. was to clarify and identify whom or what USB is and why it suing me.

246. As such, by silence, nonproduction of the proof authority from implied trust and fake assignment of mortgage, USB, WF, Steven J. Baum, P.C. and its attorneys admitted by contrived ignorance that they willfully violated FDCPA and committed crimes against me per 18 USC 242.

247. As result of silence, nonproduction and lack of action on USB's part, 2009 foreclosure case was dismissed in August 1, 2013 for failure to prosecute and lis pendants was canceled by supervising Judge Knipel.

248. As such, common-law tort of malicious prosecution aroused because this action ended in my favor.

249. After 2009 complaint was dismissed for failure to prosecute, Steven J. Baum, P.C. transferred this case to FRENKEL without notice of substitution of attorneys to me.

250. Steven J. Baum, P.C., FRENKEL, WOODS and REED did not have any writings to show "prima facie evidence of the attorney's authority" to represent USB, conduct foreclosure, since no verification of any complaint by USB's employee was made and I am confident that no evidence to the contrary existed.

251. Therefore, Steven J. Baum, P.C., FRENKEL WOODS and REED and attorneys knew or had duty to know that these firms were estopped and forbidden from conducting foreclosure on their own behalf.

**Yet another harassment by Wells Fargo**

252. In September 2011, WF harassed me by sending some thugs who broke the gate with lock on my

property triggering call to 911, after which these thugs apologized and said that they sought the property was abandoned, which was a lie.

253. I am aware of several instances where WF sent some thugs who in the absence of homeowner "cleaned up" the house in daylight. With this "cleaning," homeowners lost all their belongings and upon return found that the locks were changed. Later on, WF would tell the police that this "cleaning" was made by mistake. Needless to say, that homeowners then were unable to continue defense to foreclosure.

254. Shortly thereafter, WF posted sign on my gate that agent inspected my property and determined that it was vacant. That in turn forced me to write WF a letter with qualified written request "QWR." In it, I asked, besides other things, for a copy of note and mortgage, if they have it.

255. In addition, I asked that the reply to this letter be sent to my notary's address so that the notary will witness receipt or absence of the receipt from WF. My notary never received anything from WF.

256. This letter was sent by certified mail return receipt requested.

**2014 – 2016 foreclosure litigation – continuing harassment, malicious prosecution, trespasser's fraud and deceit**

257. In January 2014, USB, allegedly hired FRENKEL to restore foreclosure action to calendar and for order of reference. Supporting affirmation now stated different facts from facts of USB in 2009 foreclosure complaint and wanted to change plaintiff's name contrary to doctrine of judicial estoppels.

258. According to affidavit of merit filed in state court, WF accelerated my mortgage note on May1, 2009.

259. This fact will become material and relevant in 2016 round of foreclosure and beyond.

260. Once again, still undisclosed interloper and meddler who learned the lesson from prior lost action, changed the name of USB on the caption without order of court and forced me to defend my property and myself against new false accusations by filing cross-motion to dismiss foreclosure action.

261. Once again, I rebutted correctness of identity of USB, all attorneys' sworn statements, newly fabricated exhibits of notes and mortgage, and so-called "corrective assignment" of mortgage, **Exhibit 2**.

262. That "corrective assignment" was not made by MERS as well, had similar defects as the first one, and therefore was void for the same reasons as the first one (**Exhibit 3**).

263. The court could not ratify it as well. There will be more about "corrective assignment" below.

264. All attorneys from FRENKEL knew or had duty to know that by operation of law, they must file counter-affidavit or my affidavit stands as fact and truth defeating motion filed by them.

265. Again, according to doctrine of judicial estoppels, I rebutted presumptions of validity of each document.

266. This, in turn, shifted burden of proof on USB and its new attorneys to come with admissible evidence per CPLR §322 (a).

267. Knowing CPLR §322 (a), trespassers intentionally failed to meet the burden using contrived ignorance of duty to disclose identity of the client.

268. As such, I made a negative inference that FRENKEL did not have POA from USB to conduct foreclosure, and conducting it on their own behalf, which is illegal.

269. In this new USB foreclosure round, attorneys came up with CORRECTIVE ASSIGNMENT made in 2013 purportedly correcting Scrivener's Error.

270. However, because first assignment was void as fraudulent transaction, second assignment could not correct first fraudulent transaction made in 2009.

271. Trespassers failed to explain or answer my question, "Why WF did not make a new assignment since first was void or needed immediate correction" Exactly! Good question!

272. Upon information and belief, the unknown to me interloper could not find anyone with authority from MERS to lawfully make a new, lawful assignment of mortgage.

273. Therefore, interloper(s) using contrived ignorance of void first assignment of mortgage decided to "correct Scrivener's Error" and present "repackaged" void assignment as lawful to court and I.

274. In that round of foreclosure, I demanded to see an original note, which attorneys claimed was in their possession.

275. One of the attorneys of the firm appeared in open court and presented to me an alleged original note.

276. After examination of the note, I found that my signature was mechanically forged and that it was redacted using "whiteout" in the area for stamps and signatures

277. The paper was freshly white after all these years. I also found undated rubber stamps with rubber signatures on that note made to order of Wells Fargo Bank from Wells Fargo Bank "transferring" alleged note

to itself, which was obvious absurdity.

278.  Since the was no date of stamps and signatures, USB could not prove that it acquired notes before the

date of foreclosure

279.  Thereafter, I filed amended cross-motion to dismiss where I added my newly discovered facts and the

new main argument written below:

> "Upon the court's and my examination of the purported note produced by alleged owner, original
> owner sold its purported claim and note "without recourse" to, in my belief, undisclosed debt
> buyer for pennies on the dollar. "Without recourse" indicates to the court and debt buyer that no
> claim can later be made against the original owner (purported holder of the authenticated note
> and mortgage) as to authenticity and/or legality of the claim and note. In addition, I discovered
> together with the court, note contain an area, which was "white out" thereby hiding other
> endorsement, which would be a notice and reason why it was sold "Without recourse" to the
> buyer. As the saying goes, "buyers beware."
> "I move this Honorable court to take mandatory judicial notice that this note is redacted ("white
> out"), or used before, and therefore altered and void just like any bank check would be."
> "Alternatively, upon circumstantial evidence and logic, I believe that undisclosed debt buyer
> purchased an evidence of debt, or fabricated it, and is proceeding with collection activity
> posturing as original Plaintiff with the ownership of original note. Accordingly, I rebutted
> presumption of document's authenticity and legality of the claim against me and demand proof
> from Plaintiff."

280.  It was the third time when opposing attorneys violated CPLR §322(a), did not rebut above quoted

averments and went silent using contrived ignorance of duty to disclose identity of the client. To pierce it, in

my cross-motion to dismiss I wrote:

"NOTICE TO FRENKEL LUMBERT WEISS WEISMAN & GORDON, LLP AND ALL
ATTORNEYS
12. As *pet Amalfitano v. Rosenberg,* 12 NY 3d 8 - NY Court of Appeals (2009) you are in violation of
Judiciary Law § 487.
The court stated:
"The purpose of the statute is to "enforce an attorney's special obligation to protect the integrity of the
courts and foster their truth-seeking function."
"A violation of Judiciary Law § 487 may be established " either by the defendant's alleged deceit or by
an alleged chronic, extreme pattern of legal delinquency by the defendant"

281.  In my cross-motion to dismiss, I also requested trial by jury in order to call employee of USB to the

witness stand and to dismiss this action with prejudice.

282.  In reply, trespassers filed cross-motion to discontinue action and during scheduled pre-trial conference,

attorney from FRENKEL essentially begged me to let them save their face and that they (USB) will never

bother me again.

283. I had an alternative action by going on trial and dismissing the action with prejudice.

284. I was naïve and relied on this promise in open court, and did not oppose that motion.

285. FRENKEL's motion to dismiss was granted on January 6, 2016 by Hon. Bert Bunyan.

286. Additionally, in my quest to meet the rightful owner of the note and settle controversy with my counterclaims, on or about March of 2015, I sent rescission letter to WF.

287. By operation of law, WF had 20 days to challenge my rescission in federal court.

288. WF, using contrived ignorance, only sent me acknowledgment of my letter and later defaulted, which would be another res judicata.

289. Because of that, I realized that this foreclosure is unconscionable since attorneys involved refused to correct their false statements, mistakes or errors on the record.

290. It would be unjust in the court of equity to allow some interloper who made false representations in court to retain the fruits of my life's labor.

**2016 – 2019 foreclosure lawsuit – Supreme Court Kings County Index No 506127/2016 – continuing harassment, malicious prosecution, fraud, deceit, violation of FDCPA and RICO despite Double Res Judicata.**

291. According to common law, WOODS committed barratry, a crime of instigating controversy and profiting from it while Federal law, inter alia, calls it RICO.

292. Attorneys Munian, Jablonski and Wildermuth appeared in that court.

293. Attorneys knew due to my notice to them that 6 years statutes of limitation to collect on a debt run in 2015.

294. Attorneys knew or had duty to know the law stated below.

295. In *Marrero v. Crystal Nails*, 114 AD 3d 101 - NY: Appellate Div., 2nd Dept. (2013) the court held:

> "CPLR 205 (a) provides that when an action is **dismissed** on grounds **other** than **voluntary discontinuance**, lack of personal jurisdiction, **neglect to prosecute**, or a final judgment on the merits, the plaintiff may bring a new action within six months of the dismissal, even though the action would otherwise be barred by the statute of limitations" [emphasis mine]

296. 2009 action was dismissed for neglect to prosecute and 2014-2016 action was dismissed by voluntary discontinuance. As such, per state law above and common law it was *Double Res Judicata.*

297. This Honorable Court should take Judicial Notice about this New York law and the fact that Judge

Bunyan granted motion of Plaintiff, USB, to discontinue foreclosure action against Michael and that it was granted on January 6, 2016.

298.  Upon information and belief, trespassers filed motion to discontinue because they knew or had duty to know that MIN number of alleged note and mortgage had status "Inactive," and therefore were afraid to go on trial for fear to be publicly humiliated and exposed by me.

299.  Alternatively, trespassers committed fraud upon the court and Michael, and breach of contract when they in open court negotiated voluntary discontinuance without Michael's opposition or trial.

300.  The reason that trespassers defrauded the court and Michael this way, was that they wanted to switch judges – from honest and honorable Judge Bunyan to dishonest and corrupt judge Dear and continue their crimes against Michael, which is exactly what happened.

301.  New York Unified Court System's rules published on its website in section Affidavit in Support of motion says the following:

"The Affidavit should say:
what is being asked for and why
the facts about the case
**whether or not the movant has ever asked the court for this before, and if so, what happened
and why the movant is asking again.**" [Emphasis mine]

302.  In this 2016 case, movant was USB. Because it is legal fiction, some employee with authority and competence to verify complaint must sign verification in order for the complaint to be valid.

303.  Upon my personal investigation of foreclosure mills, no bank's employee ever verified complaint, which is also the case in all 3 Rounds of foreclosure.

304.  I wrote in my affidavit in opposition at that time:

"Alleged Plaintiff's motion for order of reference, which is second after 2013, too does not have movant's affidavit in support from USB."
"Current Plaintiff s attorney, Victoria E. Munian. Esq., writes in the certificate of merit:
"1.I am an attorney at law duly licensed to practice in the State of New York, and am affiliated with the law firm of Woods Oviatt Gilman LLP, attorney for plaintiff U.S. Bank National Association, as Trustee for Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-F in this action."
She further writes: "On April 6. 2016 I consulted about the facts of this case with the following representatives of plaintiff: Daniel V. Edward. Vice President of Loan Documentation."
"Prior to producing my answer with counterclaim, in good faith, I called Victoria E. Munian. Esq. at her office and attempted to inform her about the history of prior fraudulent litigation, its outcome and about other issues I raised herein. After a few minutes into our conversation, she

abruptly ended it after I started talking about plaintiff's identity.

On March 1, 2017, I called WOODS OVIATT GILMAN, LLP. and asked receptionist for information about US Bank. No one could find any information such as name, mailing address or telephone number of Plaintiff in firm's computer system.

Another staff member directed me to call Wells Fargo at 800-416-1472. No one at this number was able to help me and worker there directed me to call Wells Fargo at 866-234-8271. No one at that number would identify Plaintiff and give me any contact information.

Based on the foregoing, I aver that U.S. BANK NATIONAL ASSOCIATION. AS TRUSTEE FOR BANC OF AMERICA FUNDING CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006F does not exist, and therefore demand its articles of organization or formation together with information from the federal territory or state under which it registered."

.

305. In addition, Munian committed perjury by writing in her certificate of merit that USB asked for order of reference for the first time, when she knew (from Michael) or should have known that FRENKEL already asked for such order and later dismissed the foreclosure.

306.  Thereafter I wrote:

"NOTICE: Victoria Munian, Esq. you must rebut this affidavit point for point and/or should contact your licensed attorney for advice on how to report this case to your professional liability insurance carrier"

307. Once again, trespassers brazenly refused to provide evidence of authority from USB in violation of CPLR §322(a). At this point, I pierced contrived, willful ignorance of crimes committed by attorney Munian and demonstrated on the record that she committed perjury because she failed to rebut my affidavit point for point. Now, she was/is judicially estopped to change her testimony.

308. Upon information and belief, Victoria Munian, Esq. after above notice to her, quit working at WOODS and moved to Georgia to save her attorney license.

309. Upon information and belief, Jablonski and Wildermuth replaced Munian right after she quit. They continued WOODS harassment, fraud upon the court by officers of the court until 2019.

310. Miranda L. Sharlette a/k/a Miranda Jakubec committed perjury in court by certifying that she examined original note and mortgage and that the copies of them are exactly the same.

311. What she examined, if she even did, were redacted copies of the fabricated note and mortgage. These redacted copies did not have "MERS MIN" number and "loan number" on them and were filed in court by somebody from WOODS.

312.  Miranda L. Sharlette knew that without said numbers, note and mortgage were fake, unidentifiable, fabricated copies.

313.  Indeed, since the exact copies of the "originals" were redacted, then the copies of "originals" were redacted as well, which would be an absurdity and Miranda L. Sharlette knew it.

314.  In addition, she had conflict of interest, by self-serving certification of her employer's work for a client, in violation of advocate – witness rule of NYRPC, and she knew it.

315.  Unfortunately, in 2009, I did not discover the "I assigned your mortgage to myself" scam, nor anybody else known to me discovered it. It was not until 2019 that I discovered it when I filed complaint against WF with Inspector General of FHFA and said complaint was transferred to CFPB. On the website of CFPB, I discovered its finished litigation case leading to *NATIONSTAR vs. SORIA* discussed above.

316.  In addition, due to my complaint to FHFA, I received "a jaw dropping," self-incriminating admissions and documentary evidence from WF, which was never presented in any courts' foreclosure litigation by WF and its alleged attorneys, **Exhibit 5**.

**More evidence of fraud upon the court and I by WF and its employees from 2009 until present**

317.  Notwithstanding the fact that from 2009 until 2019, USB and WF refused to provide identity of the real owner and holder of my note and mortgage, WF finally "revealed" to CFPB that it "owner and holder" of my original note and mortgage by fabricating yet another note and mortgage and certifying copies of it to CFPB.

318.  These copies had different stamps and signatures and there was no mentioning of USB anywhere on this copies.

319.  **Exhibit 5** shows that employee of WF, Kelly Duncan, in complete disregard to truth and falsity of her statement to CFPB and Michael, made the following false and misleading statement in court:

"Origination concerns
This adjustable rate account was opened on December 14, 2005, with Fairmont Funding LTD, and secured by the purchase of property located at 4221 Atlantic Ave, Brookl3m, NY 11224. **We purchased the account on January 09, 2006.** [emphasis is mine]

320.  Kelly Duncan made this court's statement (CFPB) in complete disregard to her knowledge that alleged debt paid off and WF cannot claim that I owe money to USB.

321.  Kelly Duncan wrote to CFPB **"We purchased the account on January 09, 2006"** in order to deceive the court by implying that WF is not a debt collector per FDCPA because it collects the debt for "itself," when in bankruptcy court WF and its attorneys stated that WF is the servicer, which is a debt collector.

322.  This statement was in immediate contradiction to information from **Exhibit 4** showing that Fairmont is the investor (creditor), and therefore WF did not and could not "purchased the account on January 09, 2006."

323.  This statement is also contradicted numerous implied statements in other courts by USB and its attorneys since 2009 that it is trustee of securitized trust that supposedly holds the note and mortgage.

324.  This statement is also contradicted numerous statements of USB and its attorneys that Bechakas assigned my mortgage from Fairmont to USB without any mentioning of WF.

325.  Assignments (**Exhibit 2 and Exhibit 3**) were used as part of proof of claim in support of standing in my Chapter 11 case by USB, WF and its attorneys.

326.  **"We purchased the account on January 09, 2006"** immediately contradicted the "USB is the owner and holder of a note and mortgage" by USB and its attorneys in every foreclosure case against me.

327.  Her statement and **Exhibit 4** also contradicted the statement that "USB is creditor" by USB' attorneys in bankruptcy court.

328.  This statement and **Exhibit 4** also revealed that USB, WF, and attorneys made false "representation to the court" pursuant to FRBP 9011.

329.  Kelly Duncan also wrote to to the court (CFPB):

"Foreclosure on the account
We've determined the account was handled properly and no corrections are needed as no error has occurred. We'd like to provide you with more information about our resolution.
Here's what we've found
**A letter dated December 22, 2015, was sent to you advising that the loan was delinquent in the amount of $263,193.58 and this amount needed to be paid by January 26, 2016, or the account could be accelerated."** [Emphasis mine]

330.  Kelly Duncan, in order to deceive the court, deliberately failed to admit that WF accelerated alleged debt in 2009, filed foreclosure in 2009 in State court and then voluntarily withdrew complaint in 2016 due to lack of evidence of standing of USB and that WF is attempting to collect time-barred debt.

331.  Kelly Duncan knew that no letter was sent to me "dated December 22, 2015" and that WF failed to submit it in 2016 illegal foreclosure by WOODS.

332.  "We purchased the account on January 09, 2006" impeached and unraveled the POC (form 410) as follows:

"Part 1: Identify the Claim
1. Who is the current creditor?
U.S. Bank National Association, as Trustee for Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-F
Name of the current creditor (the person or entity to be paid for this claim)
Other names the creditor used with the debtor

2. Has this claim been acquired from someone else x No
                                    □ yes. From whom?

333.  By filling in form 410 and placing X next to "No" in POC, Fugate from WOODS deliberately failed to mention that alleged claim was "purchased from Fairmont on January 9, 2006 by WF," which statement also deliberately contradicted information in **Exhibit 4** showing that Fairmont is still the creditor according to MERS system.

334.  If trespassers stated in proof of claim that USB purchased the claim from somebody else, then trespassers would have to prove it, but they knew that they could not because of fraud upon the court by officer of the court unraveled by **Exhibit 4**.

335.  As a result, I have made an inference that Steven J. Baum, P.C. in an effort to avoid complying with CPLR §322 (a) deliberately failed to get verification of complaint by any officer or employee of USB because USB did not give POA to Steven J. Baum, P.C. to start foreclosure against me.

336.  Therefore, purported assignment of my mortgage in 2009 was unauthorized, fraudulent transaction or conveyance made by Steven J. Baum, P.C and Bechakas to conduct fraudulent foreclosure on its own behalf.

337.  This fact is relevant and material because it is strike toward validity of purported mortgage assignment by MERS purportedly made on August 25, 2009 when in fact MERS ceased to exist as nominee for Fairmont in 2007.

338.  Following the same logical thinking, I inferred that USB did not or could not give power of attorney (POA) to Steven J. Baum, P.C. to conduct foreclosure. I believe that MERS did not or could not give POA to

Steven J. Baum, P.C. to create an assignment of mortgage in 2009 and I am confident that no evidence to the contrary existed.

339.  Alternatively, I believe that MERS and USB were not even aware that Steven J. Baum, P.C. intended to conduct foreclosure against my property, and I am confident that no evidence to the contrary existed.

340.  In addition, upon information and belief derived from several memorandums of law by judges in other litigation cases, Elpiniki M. Bechakas Esq. was neither employed by MERS, nor was its agent, and therefore lacked authority from MERS to create any assignments and I am confident that no evidence to the contrary existed.

341.  Furthermore, assignment from MERS checklist evidences its internal procedures and quality control. Upon information and belief, this checklist form (mentioned above ) is for authorized by MERS individuals only who permitted to create assignments of mortgage using MERS computer program. The checklist states that if individual does not comply with MERS requirements, assignment would not be valid and approved by MERS. Apparently, this checklist demonstrates that one has to have a password and user ID to create an assignment, which will have some MERS attributes on it after assignment printed out. On my 2009 assignment made by Bechakas there are no such attributes, and therefore this court should conclude that this assignment was unauthorized by MERS and therefore is void.

342. From 2010 until 2013, USB and Steven J. Baum, P.C. were silent and Administrative Judge Lawrence Knipel of Kings County Supreme Court dismissed the action for failure to prosecute and vacated lis pendens.

343.  According to doctrine of judicial estoppels, USB had 4 years to produce promissory note and mortgage, but failed to do so thereby triggering inference that neither USB with Steven J. Baum, P.C., nor WF were in possession of the note and mortgage or knew of its whereabouts. Accordingly, USB was Estoped by Action of Silence and nonproduction to come later with any note and mortgage and start foreclosure.

344.  Exactly, where were USB, its alleged attorneys and servicer WF in regards to 2009 foreclosure production of evidence including violation of CPRR 322(a)? Good question! Because of this, I concluded and I aver that USB 1) had no idea about 2) 2009 foreclosure by Steven J. Baum, P.C., 3) did not authorize any 4) assignments of mortgage or 5) note and I am confident that no evidence to the contrary existed.

345.  I believe that no securitized trust gave Steven J. Baum, P.C. even a copy from real note and mortgage and I am confident that no evidence to the contrary existed.

346.  Alternatively, If USB was holder of the real note and mortgage then its remedy for losing 2009 foreclosure would have been a legal malpractice claim against Elpiniki M. Bechakas Esq. and Steven J. Baum, P.C., in which case I should be left alone because USB "blew" statute of limitation to conduct foreclosure.

**Bankruptcy Court Litigation –continuing harassment, malicious prosecution, fraud, deceit by trespassers and human trafficking  – where there is no rule of law according g Elizabeth S Stong and US Trustees**

347.  On June 6, 2019, chapter 13 petition was filed on my behalf in this court.

348.  On or about August 15, 2019, USB allegedly represented by WOODS, filed proof of claim.

349.  On October 28, 2019, chapter 13 case was converted into Chapter 11 case.

350.  WOODS submitted power of attorney attached to proof of claim stating that USB hired WF as servicing agent for USB to file proof of claim on its behalf as agent of principal with rights to litigate in bankruptcy court and conduct foreclosure of Michael's property.

351.  I, in my Chapter 11 petition, listed USB's debt as disputed, contingent, unliquidated and Judge Stong did not make any determination on these issues.

352.  On March 17, 2020, Maxon from WOODS, on behalf of WF filed a motion for relief from automatic stay in connection with the property located at 4221 Atlantic Avenue, Brooklyn, NY 11224 (the "Stay Relief Motion").

353.   On April 27, 2020, Maxon filed a letter requesting an adjournment of the hearing for the Stay Relief Motion on consent of the parties to May 22, 2020.

354.   On April 29, 2020, judge Stong adjourned the hearing of the Stay Relief Motion to May 22, 2020, based on the alleged consent of the parties.

355.  On May 18, 2020, I filed a letter-motion objecting to adjournment order and stated that I never discussed with Maxon her request for my consent to adjournment to May 22, 2020 hearing date, and therefore adjournment was fraudulently scheduled without my knowledge and consent.

356.  Maxon did not deny that averment and was silent.

357.  In addition, I requested adjournment from May 22, 2022 to the longest possible date in the future due to COVID-19 lockdown of New York City and my technical problems with computer equipment.

358.  On May 19, 2020, I filed a Cross-motion to Strike and Dismiss with Prejudice the proof of claim allegedly filed by WF, which was scheduled to be heard on May 22, 2020 (the "Motion to Strike").

359.  In my Motion to Strike I notified Judge Stong and WOODS that my motion lacks supporting exhibits and incomplete due to my technical problems with computer equipment failure.

360.  On May 21, 2020, WF allegedly filed Amended Proof of Claim with amended power of attorney attached.

361.  Attorney Fugate deliberately attached to POC incomplete POA, because it was fake.

362.  In 2016, some attorney from WOODS too deliberately attached incomplete copy of PSA, and when I objected, refused to attach the complete copy. Information in complete copy of PSA conclusively unraveled fraud upon the court by WOODS and trespassers in whole. I will come to that issue later.

363.  Attorney Fugate, therefore, *knew or had duty to know* that at the time of filing POC attached copy of POA was incomplete, misleading the court and void as evidence of authority to appear in this court because at the beginning of copy of POA says, "The trusts identified on **Schedule A** (the "Trusts")…" However, no **Schedule A** was attached to this copy of POA and, as I demonstrated by **Exhibit 4,** never was (Fairmont is investor).

364.  Accordingly, attorney Fugate *knowingly* and *deliberately* failed to submit *prove of identity of creditor and her authority* to appear in this court; *knowingly misled* the court and filed POC *without proof of authority*.

365.  As such, POC and Maxon's motion is unauthorized filing and unauthorized practice of law.

366.  I have dealt with unauthorized filings by attorneys involved since 2009 and will show circumstantial evidence below.

367.  On the top of everything, POA was acknowledged and notarized in Massachusetts.

368.  I understand that "we are not in Kansas anymore," but at least we have to be in Ohio or in Minnesota where corporate headquarters of USB located.

369.  In March of 2020, on numerous occasions I contacted Fugate, Maxon and others from WOODS by email and politely asked whether Fugate inadvertently failed to attach a copy of **Exhibit A** to **POA**.

370.  I received no answer from them.

371.  Accordingly, I demand an explanation and proof whether the people that signed POA reside in Massachusetts, whether notary is employee of USB and who from Minnesota or Ohio headquarters authorized them to appoint WF in Massachusetts to conduct foreclosure in New York.

372.  The Court should judicially notice, that WOODS *judicially admitted* that in order for them to file any claim against my property in court, the firm needed the power of attorney from lawful owner and holder of original note and mortgage, Fairmont.

373.  According to WOODS, WF and WOODS obtained POA only in 2018.

**Future proves past - WOODS did not have authority even from USB to conduct foreclosure in 2016**

374.  Therefore, alleged creditor did not authorize WOODS to do the state foreclosure action in 2016 and I am confident that no evidence to the contrary existed because WOODS refused to produce POA in 2016 to me.

375.  Accordingly, due to the doctrine Estoppels by Action, this court should treat this POA as fabrication in support of filing POC in bankruptcy court.

376.  In 2020, in my affidavit in support of my cross-motion, I predicted that there would be "change of characters" on this charade of POC.

377.  I predicted that attorneys from WOODS would fail and refuse to rebut my affidavit in cross-motion to dismiss.

378.  I predicted that there would be another attorney with "dog ate my homework" excuse or explanation for WOODS' wrongdoing.

379.  I also predicted that WOODS and its attorneys brazenly would go silent and fail to rebut that they *knowingly failed* to prove their authority to file POC. I showed *knowledge* in historical factual sequence above.

380.  It turns out, I was right on all my predictions because all WOODS attorneys did not rebut my affidavit in my amended cross-motion to strike and, instead, "lawyered up" by REED, which made this bankruptcy case into "Circus Circus."

381.  In Circus, when decorations need to be changed or animal does not respond to commands of the master, clowns enter arena to distract public from that and switch attention on the clown. In this case, the clown is attorney Natsayi Mawere and "wild animal" is Michael,

382.  She claimed in my Chapter 11 proceeding to be WOODS' co-counsel representing USB and WF, but did not show POA for REED.

383.  She did not add any new information to the case.

384.  She did not add any new exhibit to the case.

385.   In reply to my affidavit in support of cross-motion to dismiss, is she appeared as Fugate's witness and testified as follows:

> "1. I am an attorney at law admitted to practice before this Court… counsel to Secured Creditor U.S. Bank National Association…"

> "2. I submit this **declaration** in support of U.S. Bank's opposition to Debtor Michael Krichevsky's amended cross-motion motion to strike…"

> **"I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY**
> **A. The Foreclosure Action.**
> **Following Mr. Krichevsky's default** on his monthly mortgage payments, on April 18, 2016, U.S. Bank filed an action to foreclose his $747,600 mortgage in the Kings County Clerk's office…"
> **B**. **The Bankruptcy Action.**
> **"To interfere with the foreclosure of the mortgaged property**, Mr. Krichevsky filed a chapter 13 bankruptcy petition on June 6, 2019… U.S. Bank timely filed its Proof of Claim (Claim 3-1) on August 15, 2019, which U.S. Bank later amended on May 21, 2020 to include a complete copy of the Limited Power of Attorney, **which was inadvertently omitted** from the Schedule A attachment" [emphasis mine]

386.  "which was inadvertently omitted" is her version of "dog ate my paperwork" prediction, but she is deliberately failing to address raised by me fact that POA does not show "Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-F" in the "Trusts" list.

387.  In violation of rule 9011, she deliberately omitted from "RELEVANT BACKGROUND AND PROCEDURAL HISTORY" numerous *ultimate* facts in my favor including failed 2009 foreclosure, failed in 2016 foreclosure, and the ultimate fact that she is as debt collector attempting to collect on the time-barred debt.

388.  Again, she failed to enter into the record name of the trust because she knew that there is no trust "Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-F" in the **SEC database**.

389.  She knew the information from **Exhibit 4** that per MERS database, "owner and holder of my note and mortgage" is Fairmont.

390.  She did not deny that the case is rigged by all Defendants in concert.

391.  I summation,  she merely parroted WOODS' Fugate and Maxon false representations to the court in violation of Rule 9011, in an attempt to distract the Court and Michael from the fact that Fugate and Maxon failed to rebut my affidavit in opposition to POC and motion for relief from stay.

392.  She failed to rebut my affidavit in opposition to POC and amended motion for relief from stay.

**If a party seeking relief lacks standing, the trial court does not have jurisdiction to grant the requested relief**

393.  Widely used 6A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1541 (1990) states that Federal requirement is that actions be prosecuted in the name of the real party interest. In this case, "US Bank as trustee," admittedly an agent of the principal, beneficiary, real party in interest – the note owner and holder, trust – Banc of America Funding Corporation, which was not joined here for the reasons stated above.

394.  I aver that current, alleged "creditor"  USB has no standing in this case due to numerous reasons, which I showed in detail above, but the main one is – IT DOES NOT EXIST by law or by fact in this court.

395.   Accordingly, what attorneys are doing is stealing my property by false pretenses.

396. This is the reason why an alleged creditor, USB and its alleged attorneys in this bankruptcy Chapter 11 case, intentionally did not plead federal standing jurisdiction by claiming loss and injury in fact, contrary to long settled principle in *Warth v. Seldin*, 422 US 490 where Supreme Court in 1975 ruled:

"[T] he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim

to relief on the legal rights or interests of third parties."

"In its constitutional dimension, the question of standing is whether the plaintiff has alleged such a personal stake in the outcome of the controversy so as to warrant the plaintiff's invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on the plaintiff's behalf."

397.  According to trespassers' own admissions in State courts and in this Chapter 11 case, alleged creditor USB is "U.S. Bank National Association, as Trustee for Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-F ("U.S. Bank")."

398.  I objected and continue to object to this gibberish, deceitful and vague phrase in every court.

399.  However, this phrase clearly implies that if USB is trustee then it is not the creditor, but rather Banc of America Funding Corporation is.

400.  As such, any honest jurist would conclude that Banc of America Funding Corporation should be named as a creditor in bankruptcy court's proof of claim by USB.

*Notice to the Court and US Trustees of Uncontested Exculpatory Facts or Evidence in my favor.*

401.  I notified all Defendants *individually* about this fraud upon the court by, among other papers, my amended cross-motion to strike USB' POC, which I incorporate by reference herein.

402.  Therefore, these Defendants and individual attorneys knew about this continuing fraud upon the court and I, but failed and refused to correct their paperwork or to drop USB as their client.

403.  Attorneys also knew that if they pleaded damages or loss by USB, I would immediately ask for discovery of records proving damages or loss, which records they knew USB never had.

404.  Alleged creditor, USB, therefore could not have it both ways – claiming to be a creditor on foreclosure complaint or POC and at the same time not suffering any damage or loss.

405.  Without suffering damage or loss USB had no standing in any court.

406.  In fact, in New York there is affirmative defense of "lack of damages" to cause of action for breach of contract and all Defendants involved including trustees and judge, knew or had duty to know that law and had duty to act accordingly. See *Wenger v. Alidad*, 265 AD 2d 322 - NY: Appellate Div., 2nd Dept. (1999) where the court stated:

" While it is undisputed that the defendant Washington Mutual Bank made several errors in regard to the plaintiff's refinancing transaction, the plaintiff cannot prevail on a breach of contract theory unless

he sustained actual damages as a natural and probable consequence of such breach"

407.    Therefore, even if, which is not admitted and stated only for the sake of argument, I did default on

alleged mortgage and note, USB did not incur any damages due to my breach of contract. Its

408.    Accordingly, all attorneys involved had no right to sue Michael, harass him for 11 years and cause him

damages.

*Notice to the Court and US Trustees of Uncontested Exculpatory Facts or Evidence.*

409.    I notified all judiciary Defendants in this bankruptcy Chapter 11 case about this defect of standing (lack

of damages) in their proof of claim (POC) and in motion to lift stay.

410.    These Defendants had an opportunity to amend or supplement their POC and motion to lift stay in

compliance with *Warth v. Seldin* and WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND

PROCEDURE..

411.    However, they did not amend or withdraw POC and/or motion to lift stay in violation of *Warth v. Seldin*

and New York State Judiciary law §487, which is a crime and it states:

"An attorney or counselor who:
1.    Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive
the court or any party;  or,
2.    Wilfully delays his client's suit with a view to his own gain;  or, wilfully receives any money or
allowance for or on account of any money which he has not laid out, or becomes answerable for,
Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he
forfeits to the party injured treble damages, to be recovered in a civil action."

412.    Knowing this law, they intentionally failed to plead standing in violation of federal and state criminal

laws.

413.    The damages were caused to me by Defendants fraudulent scheme and conspiracy to acquire a title to

my property are real and computable. The goal of this criminal conspiracy was and is to remove me from my

home, enrich themselves and silence me as whistleblower by making me homeless.

**MERS assignments still used in Bankruptcy Court to perpetrate fraud upon the court by officers of the
court and upon Michael.**

414.    Fannie Mae's Deputy General Counsel stated in the 2006 Baker Hostetler's report that UCC Article 9

makes assignments irrelevant.

415.    All judiciaries involved, knew or had the duty to know that it didn't matter whether MERS assignments appeared in the City Register record or not because the mortgage follows the note upon proof of purchase of the debt.

416.    Having this knowledge, trespassers involved pretended that 2009 assignment of mortgage made by Bechakas and later "corrective assignment" made by Tautge is a necessary evidence to prove standing in court, when they knew that those assignments are irrelevant as evidence of standing in court.

**CAUSES OF ACTION**
**COUNT ONE**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AGAINST**
**BANKRUPTCY TRESPASSERS**
**15 U.S.C. §§ 1692 et seq.**

417.    I incorporate by reference all of the above applicable paragraphs of this Complaint as though fully stated herein.

418.    To avoid redundancy, every person trespasser, including entities, jointly called "bankruptcy trespassers."

419.    Personally, every bankruptcy trespasser, is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

420.    USB, WF, WOODS by Fugate filed its proof of claim on August 15, 2019, which was amended on May 21, 2020.

421.    The alleged debt in POC is a consumer debt as that term is defined by 15 U.S.C. § 1692 a(5).

422.    Bankruptcy trespassers, due to their status as a debt collector, including their employees and its attorneys renders them all liable for their violations of the FDCPA.

**Respondeat Superior Liability**

423.    The acts and omissions of the individual trespassers named herein, and other debt collectors employed as agents, employees by trespassers who communicated with Court and with Plaintiff as more described herein above, were committed within the time and space limits of their agency relationship with their principals and with each other.

424.    The acts and omissions by the individual trespassers named herein, and other debt collectors, were incidental to, or of the same general nature as, the responsibilities these agents, employees were authorized to

perform by their principals, employers in collecting consumer debts.

425.     By committing these acts and omissions against Michael, the individual Defendants named herein and other debt collectors were motivated to benefit not only to themselves, but to their principals, employers as well.

426.     Entities trespassers are therefore liable to Michael through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its collection employees in their attempts to collect this alleged debt from Michael.

427.     Trespassers have never (prior to or subsequent to Michael's filing Chapter 11) mailed anything to Michael with information that was true including the statutory notification requirement under 15 U.S.C. § 1692g.

428.     Trespassers' illegal collection efforts and harassment are highly upsetting to Michael and his health.

429.     The foregoing acts and omissions of the Defendants starting from 2009 until present constitute numerous and multiple violations of the FDCPA including, but not limited to, 15 U.S.C. §§ 1692c(c)(1, 2, 3), 1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(7), 1692e(8), 1692e(9), 1692e(10), 1692e(12), 1692e(13), 1692e(14), 1692f, 1692f(1), 1692f(6), 1692f(8) and 1692g(a), 1692g(b) amongst others.

430.     As a result of Defendants' violations of the FDCPA, Michael is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 per violation pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendants herein to be determined by Jury.

**COUNT TWO**
**ADDITIONAL VIOLATIONS OF THE FDCPA**

431.     I incorporate by reference all of the above applicable paragraphs of this Complaint as though fully stated herein.

432.     The Defendant additionally violated the FDCPA. Defendants' violations include but are not limited to engaging in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt, 15 U.S.C. Section 1692d. A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the

collection of a debt. Without limiting the general application of the foregoing, the following conduct is a

violation of this section:

> "(1)The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
> (2)The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader."

433.    In the letters, bills to Michael and in court documents, Defendant's misleading and untrue statements

were intended to create a false assumption and fear in Michael's mind that he will face legal consequences and

become homeless if he does not pay the alleged debt.

434.    Michael, as a result of the conduct of the Defendants, has suffered mental anguish, emotional distress,

high blood pressure and depression.

435.    As a result of the above violations of the FDCPA, the Defendants are liable to the Plaintiff for actual

damages, statutory damages of $1,000.00, and attorney's fees to be determined by Jury.

### COUNT THREE
### WILLFUL VIOLATIONS OF THE AUTOMATIC STAY
### SECTION 362(a)

436.    I incorporate by reference all of the above applicable paragraphs of this Complaint as though fully

stated herein.

437.    Section 362(a)(6) of the Bankruptcy Code prohibits "any act to collect, asses, or recover a claim against

the estate that arose before the commencement of the case under this title."

438.    Chapter 11 case provides that all debtor's property by operation of law becomes the estate of United

States as of the petition date and all property shall remain property of the estate until the case is completed,

converted or dismissed.

439.    The actions of the Defendants as averred herein above constitute a willful, intentional and flagrant

violation of the automatic stay.

440.    The actions of the Defendants as averred herein above constitute a willful and intentional disregard for

the Automatic Orders entered by this Court and by the Code.

441.    Michael is therefore entitled to the recovery of actual damages, punitive damages and legal fees and

expenses under Section 362(k) of the Bankruptcy Code to be determined by Jury.

## COUNT FOUR
### Willful Violation of New York State Judiciary law §487

442.    I incorporate by reference all of the above applicable paragraphs of this Complaint as though fully

stated herein.

443.    Per *Amalfitano v. Rosenberg,* 12 NY 3d 8 - NY Court of Appeals (2009) the court stated, "The purpose

of the statute is to "enforce an attorney's special obligation to protect the integrity of the courts and foster their

truth-seeking function.","A violation of Judiciary Law § 487 may be established " either by the defendant's

alleged deceit or by an alleged chronic, extreme pattern of legal delinquency by the defendant"

**WHEREFORE**, Michael having set forth his claims for relief against Defendants respectfully moves this

Honorable Court as follows:

1.    That the Plaintiff recover against each and every Defendant, jointly and severally, a sum to be

determined by the Jury in the form of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

2.    That The Plaintiff recover against each and every Defendant, jointly and severally, a sum to be

determined by the Jury in the form of statutory damages of $1,000.00 per violation pursuant to 15 U.S.C. §

1692k(a)(2);

3.    That The Plaintiff recover against each and every Defendant, jointly and severally, a sum to be

determined by the Jury in the form of statutory damages of $1,000.00 per violation pursuant 15 U.S.C. §

1692k(a)(3);

4.    That The Plaintiff recover against each and every Defendant, jointly and severally, a sum to be

determined by the Jury in the form of statutory damages of $1,000.00 per violation pursuant 15 U.S.C. §

1692k(a)(4);

5.    That The Plaintiff recover against each and every Defendant, jointly and severally, a sum to be

determined by the Jury in the form of statutory damages of $1,000.00 per violation pursuant 15 U.S.C. §

1692k(a)(6);

6.    That the Plaintiff recover against each and every Defendant, jointly and severally, an award of

actual damages, punitive damages and reasonable attorney fees pursuant to 11 U.S.C. 362(k):

7    That the Plaintiff recover against each and every Defendant, jointly and severally, an award of

actual damages, punitive damages and reasonable attorney fees pursuant to 15 U.S.C. 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(7), 1692e(8), 1692e(9), 1692e(10), 1692e(12), 1692e(13), 1692e(14)

8      That the Plaintiff recover against each and every Defendant, jointly and severally, an award of actual damages, punitive damages and reasonable attorney fees pursuant to 15 U.S.C. 1692f, 1692f(1), 1692f(6), 1692f(8)

9      That the Plaintiff recover against each and every Defendant, jointly and severally, an award of actual damages, punitive damages and reasonable attorney fees pursuant to 15 U.S.C. 1692g(a), 1692g(b)

10.      That the Plaintiff recover against each and every Defendant, jointly and severally, an award of the costs of suit, any discretionary costs as may be allowable by law, prejudgment and post-judgment interest; and

11.      That Defendant-attorneys be found in Willful Violation of New York State Judiciary law §487, be removed from Plaintiff's Chapter 11 case and disbarred due to their crime of misdemeanor.

12.      That the Plaintiff be awarded such other and further relief as the Court deems just and proper.

Respectfully submitted this 11th day of February, 2021.


/s/ Michael Krichevsky
Michael Krichevsky, DIP
4221 Atlantic Ave
Brooklyn, NY 11224
718-687-2300
e-mail:tokrichevsky1@yahoo.com

In the United States Bankruptcy Court
Eastern District of New York
_____
In the Matter of:                                    CHAPTER 11 CASE No. "19-43516-ess"
Michael Krichevsky
                    Debtor In Possession
_____
Michael Krichevsky,

                    Plaintiff Under Duress, DIP
vs.
                                                     ADVERSARY PROCEEDING No.
_____


# Exhibits for Adversary Complaint

EXHIBIT 1

# ASSIGNMENT

From:  michael (tokrichevsky1@yahoo.com)

To:    niki@lawsaia.com

Date:  Thursday, December 24, 2020, 05:50 AM EST

Dear Elpiniki M. Bechakas:

Attached, please find ASSIGNMENT OF MORTGAGE, which was allegedly signed by you as Assistant Secretary and Vice President of MERS when you were working as an attorney in Steven J. Baum, PC in 2009. Then, this assignment was used to start foreclosure against me. Luckily, the case was dismissed as fraudulent. However, new law firm started foreclosure again using said assignment again.

My investigation revealed that Steven J. Baum, PC was fabricating documents for foreclosures. It used robo-signers to fabricate those documents for courts, which made them void. Federal and State law enforcement investigated said firm, and as result, it was disbanded. I am sure you know more that I do. So let me get to my point.

Please, take a look at this document. I am addressing you as my witness in pre-litigation stage of my lawsuit in federal court. My investigation also revealed that nobody was authorized to even create this assignment in blank because MERS did not have an office in Ocala, Florida, and therefore  was not even aware of what was going on in Steven J. Baum, PC in regard to this assignment. Internet is full of copies of fake assignments with your alleged signatures. They are substantially different from each other making me to suspect that your signature was forged by other people, just as my signatures were forged by somebody.

Please, let me know if this is a) your signature on that assignment, and b) if you prepared this assignment yourself, or c) who prepared it for your signature if you did not prepare it, but signed it. Please, give me your answers in the form of affidavit "to whom it may concern." Thank you very much for your cooperation.

Sincerely,

Michael Krichevsky

This is private email message and any attachment(s) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, and is for the sole use of the intended recipient. Third parties, by reading this email you enter into binding contract between you and me, one of the People of Posterity. All agents or informants working to monitor My email(s) and any other means of communication without My express written permission, are barred from any use, disclosure, or distribution. I reserve all My rights without prejudice including all intellectual property rights. If you read any of the contents of My E-Mails, you agree to pay a user fee of $325,000.00 US payable in gold or silver coin, per hour or any fraction thereof, tracked by your IP address. If you copy any of my posts, you agree to pay a user fee of $125,000.00US per use. Your use is binding contract to pay. All user fees are immediately due and payable upon use.

 ASSIGN 1 2020_10_15_22_02_14.pdf
306.3kB

## ASSIGNMENT

From:   michael (tokrichevsky1@yahoo.com)

To:     niki@lawsaia.com

Date:   Thursday, December 24, 2020, 12:48 PM EST

I forgot to give you my phone 718-687-2300 in case you have any questions.

Thanks
Michael Krichevsky

This is private email message and any attachment(s) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, and is for the sole use of the intended recipient. Third parties, by reading this email you enter into binding contract between you and me, one of the People of Posterity. All agents or informants working to monitor My email(s) and any other means of communication without My express written permission, are barred from any use, disclosure, or distribution. I reserve all My rights without prejudice including all intellectual property rights. If you read any of the contents of My E-Mails, you agree to pay a user fee of $325,000.00 US payable in gold or silver coin, per hour or any fraction thereof, tracked by your IP address. If you copy any of my posts, you agree to pay a user fee of $125,000.00US per use. Your use is binding contract to pay. All user fees are immediately due and payable upon use.

EXHIBIT 2

<table>
<tr><td>

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

</td><td>



2013090400289001001ECD26

</td></tr>
</table>

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

**Document ID: 2013090400289001**       Document Date: 08-29-2013       Preparation Date: 09-04-2013
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 2

| PRESENTER: | RETURN TO: |
|---|---|
| DEFAULT ASSIGNMENT TEAM | DEFAULT ASSIGNMENT TEAM |
| WELLS FARGO HOME MORTGAGE, X9999-018 | WELLS FARGO HOME MORTGAGE, X9999-018 |
| P O BOX 1629 | P O BOX 1629 |
| MINNEAPOLIS, MN 55440-9790 | MINNEAPOLIS, MN 55440-9790 |
| 651-605-7792 | 651-605-7792 |
| AMYEGGERS@WELLSFARGO.COM | AMYEGGERS@WELLSFARGO.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7026 | 53 | Entire Lot | 4221 ATLANTIC AVENUE |

**Property Type:** 1- 2 FAM WITH ATTCH GAR &/OR VACANT LAND

**CROSS REFERENCE DATA**

**CRFN:** 2005000701375
☒ Additional Cross References on Continuation Page

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | US BANK NA |
| 1901 E. VOORHEES STREET, SUITE C | 60 LIVINGSTON AVENUE |
| DANVILLE, IL 61834 | ST. PAUL, MN 55107 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed     09-17-2013 12:01 | | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 47.00 | **2013000380865** | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M Hill*
***City Register Official Signature***

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2013090400289001001CCFA6

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 4 |
|---|---|

**Document ID:** 2013090400289001    Document Date: 08-29-2013    Preparation Date: 09-04-2013
Document Type: ASSIGNMENT, MORTGAGE

**CROSS REFERENCE DATA**
**CRFN:** 2009000339958

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC X9998-01P
PO BOX 1629
MINNEAPOLIS, MN  55440-9049



Kings, New York
"KRICHEVSKY"

## CORRECTIVE ASSIGNMENT OF MORTGAGE

**MERS #: 100294800012018483  SIS #: 1-888-679-6377**

Date of Assignment: August 26th, 2013
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FARIMONT FUNDING, LIMITED, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST STE C., DANVILLE, IL  61834
Assignee: U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR BANC OF AMERICA FUNDING CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-F at 60 LIVINGSTON AVE, ST. PAUL, MN  55107
Executed By: MICHAEL KRICHEVSKY  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FAIRMONT FUNDING, LIMITED, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 12/14/2005 Recorded:  12/21/2005  as Instrument No.: 2005000701375  In the County of Kings, State of New York.

-Assigned Wholly by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FAIRMONT FUNDING, LIMITED, ITS SUCCESSORS AND ASSIGNS TO US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-F Dated: 08/25/2009 Recorded:  10/19/2009 as Instrument No.: 2009000339958

Section/Block/Lot BROOKLYN-7026-53

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC is at 1901 E Voorhees Street, Suite C, Danville, IL 61834, P.O. BOX 2026, FLINT, MI 48501-2026

Property Address: 4221 ATLANTIC AVENUE, BROOKLYN, NY  11224
Legal:  NA

This Corrective Assignment is being recorded to correct the Assignment recorded on the 19th day of October, 2009 as CRFN 2009000339958 as that Assignment states an incorrect Assignee of US Bank National Association, as Trustee for Mortgage Pass-Through Certificates, Series 2006-F and it should have stated U.S. Bank National Association, as Trustee for Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-F

    This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $747,600.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FARIMONT FUNDING, LIMITED, ITS SUCCESSORS AND ASSIGNS
On ___8·29·2013___

By: _____
        Stephanie Therese Tautges     ,
Assistant Secretary

CORRECTIVE ASSIGNMENT OF MORTGAGE PAGE 2 OF 2

STATE OF Minnesota
COUNTY OF Dakota

On the ___29TH___ day of ___August___ in the year ___2013___ before me, the undersigned, personally appeared ___Stephanie Therese Tautges___, Assistant Secretary, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individuals(s) made such appearance before the undersigned in the County of Dakota, State of Minnesota.

WITNESS my hand and official seal,

___Lynn Marie Sevick___
**Lynn Marie Sevick**
Notary Expires: 1/31/17
Dakota, Minnesota

LYNN MARIE SEVICK
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2017

(This area for notarial seal)

PREPARED BY: WELLS FARGO BANK, N.A.

SEAL

*RK*RKWFEM*08/26/2013 12.07.52 PM* WFEM01WFEMA0000000000000001048410* NYKINGS* NYSTATE_MORT_ASSIGN_ASSN **RKWFEM*

EXHIBIT 3

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2009100900097001001E9E67

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 3 |
|---|---|---|
| **Document ID:** 2009100900097001 | Document Date: 08-25-2009 | Preparation Date: 10-09-2009 |

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| PRESENTER: | RETURN TO: |
|---|---|
| HOLD FOR PICK-UP SUZANNE MANGO | IN CARE OF SUZANNE MANGO |
| PRIME TITLE (PT70347) | STEVEN J. BAUM, PC. |
| 410 NEW YORK AVENUE | 220 NORTHPOINTE PARKWAY, SUITE G |
| HUNTINGTON, NY 11743 | AMHERST, NY 14228 |
| 631-870-1100 | 716-204-2400 |
| mbrenner@primetitlellc.com | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7026 | 53 | Entire Lot | 4221 ATLANTIC AVENUE |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2005000701375

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC | US BANK NATIONAL ASSOCIATION |
| 3300 SW 34TH AVENUE, SUITE 101 | 180 EAST 5TH STREET |
| OCALA, FL 34474 | ST PAUL, MN 55101 |
| x  Additional Parties Listed on Continuation Page | |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 42.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed         10-19-2009 15:47
City Register File No.(CRFN):
**2009000339958**

*Annette M Hill*

***City Register Official Signature***

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2009100900097001001C9CE7

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 3 |
|---|---|

| Document ID: 2009100900097001 | Document Date: 08-25-2009 | Preparation Date: 10-09-2009 |
|---|---|---|

Document Type: ASSIGNMENT, MORTGAGE

**PARTIES**
**ASSIGNOR/OLD LENDER:**
FAIRMONT FUNDING LTD
3300 SW 34TH AVENUE, SUITE 101
OCALA, FL 34474

**PARTIES**
**ASSIGNEE/NEW LENDER:**
MORTGAGE PASS THROUGH CERTIFICATES SERES
2006-F
180 EAST 5TH STREET
ST PAUL, MN 55101

Case 1-21-01013-nhl    Doc 1    Filed 02/11/21    Entered 02/12/21 14:28:30

Loan # 0149183295-708

## *ASSIGNMENT OF MORTGAGE*

County of **KINGS**, State of New York

Assignor: **Mortgage Electronic Registration Systems, Inc. as nominee for Fairmont Funding, Ltd., its successors and assigns, 3300 SW 34th Ave. Suite 101, Ocala, FL 34474**

Assignee: **US Bank National Association, as Trustee for Mortgage Pass-Through Certificates, Series 2006-F, 180 East 5th St., St. Paul, MN 55101**

Original Lender: **Mortgage Electronic Registration Systems, Inc. as nominee for Fairmont Funding, Ltd., its successors and assigns**

Mortgage made by MICHAEL KRICHEVSKY, dated **the 14th day of December, 2005** in the amount of **Seven hundred and forty seven thousand six hundred dollars ($747,600.00)** and interest, recorded on **the 21st day of December, 2005** in the Office of the Clerk of the County of KINGS at Certificate/Docket Number 2005000701375.

This said mortgage has not been otherwise assigned.

Property Address: 4221 ATLANTIC AVENUE, BROOKLYN, NY 11224
SBL # Block 7026 Lot 53

Know that All Men By These Present in consideration of the sum of One and No/100th Dollars and other good valuable consideration, paid to the above Named assignor, the receipt and sufficiency of which is hereby acknowledged the Said Assignor hereby assigns unto the above named Assignee the said Mortgage, and the full benefit of all the powers and of all the covenants and Provisions therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

*TO HAVE AND TO HOLD* the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.
*THIS* Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.
*IN WITNESS WHEREOF*, the Assignor has caused these presents to be signed by its duly authorized officer this 25th day of August, 2009.

*IN PRESENCE OF:*

Mortgage Electronic Registration Systems, Inc. as nominee for Fairmont Funding, Ltd., its successors and assigns

BY: _Elpiniki M Bechakas_
Elpiniki M. Bechakas
Assistant Secretary and Vice President

State of New York
County of Erie  ss:
On the 25th day of August, in the year 2009 before me, the undersigned, a notary public in and for said state, personally appeared Elpiniki M. Bechakas, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he she they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_Jeanette Sheliga_
Notary Public

**SEAL**

Jeanette Sheliga
Notary Public State of New York
Qualified in Niagara County
My Commission Expires July 27, 2013

Pillar Processing, LLC
220 Northpointe Pkwy., Suite B
Amherst, NY 14228

EXHIBIT 4

2/4/2021                                    MERS® ServicerID - Investor

Select borrower type and enter borrower information to see Investor for MIN 1002948-0001201848-3.

🔘 Investor for Individual Borrower

    Your entries may be either upper or lower case.
    ⭐ Fields marked are required.
    ⭐ Last Name:  [Krichevsky                          ]

⭐ SSN: [        ] - [        ] - [          ]

☐ By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify ⭐ the results with their loan servicer.

[ Submit ]

○ Investor for Corporation/Non-Person Entity Borrower

    Your entries may be either upper or lower case.
    ⭐ Fields marked are required.
    Corporation/Non-Person Entity Name:

⭐ [                                                          ]

⭐ Taxpayer Identification Number: [                ]

☐ By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify ⭐ the results with their loan servicer.

[ Submit ]

---

Servicer:  [Wells Fargo Home Mortgage a Division of Wells Fargo Bank NA](#)
      Minneapolis, MN

                         Phone: (612) 478-6808

Investor:  Fairmont Funding Ltd.

---

[ Close Window ]

EXHIBIT 5



Wells Fargo
P.O. Box 10335
Des Moines, IA 50306-0335

July 22, 2019

Michael Krichevsky
4221 Atlantic Avenue
Brooklyn, NY 11224

Subject: Resolution for the inquiries received for account number ███3295

Dear Mr. Michael Krichevsky:

Thank you for the opportunity to address your concerns. We wanted to speak with you; however, we weren't able to reach you. We're responding and want to make sure you have the information you need.

**In your written concerns the following concerns were voiced:**

- Foreclosure on the account
- Origination concerns

Please see our response to your concerns below.

**Foreclosure on the account**

We've determined the account was handled properly and no corrections are needed as no error has occurred. We'd like to provide you with more information about our resolution.

**Here's what we've found**

A letter dated December 22, 2015, was sent to you advising that the loan was delinquent in the amount of $263,193.58 and this amount needed to be paid by January 26, 2016, or the account could be accelerated.

The loan was not brought current and the account was referred to foreclosure as allowed by the terms of your Note and Mortgage on January 27, 2016. At that time your account was due for the July 01, 2010, through January 01, 2016, payments. The foreclosure action is allowed by the mortgage documents and applicable laws. Enclosed are copies of the demand letter, Note, Mortgage, and foreclosure documents filed with the courts.

We regret this isn't the outcome you expected. If you'd like to request additional documents that support our research, you may reply to me directly at the return address on this letter or by phone at the number provided in the "Going forward" section of this letter.

Krichevsky
July 22, 2019
Page 2

## Origination concerns

This adjustable rate account was opened on December 14, 2005, with Fairmont Funding LTD, and secured by the purchase of property located at 4221 Atlantic Ave, Brooklyn, NY 11224. We purchased the account on January 09, 2006.

We've outlined the original terms of your account below:

- Interest rate of 6.500%
- Annual Percentage Rate of 6.897%
- Term of 360 months
- Initial monthly principal and interest payment of $4,049.50
- Due date of the first each month
- Original Principal Balance of $747,600.00

By the evidence of your signature on the enclosed final documents, you were aware of the terms and conditions of the loan. A notary was present at the loan closing to witness your signatures.

Those who sign the Note are responsible for repayment and agree to the terms and conditions outlined therein. When you signed the final closing documents, the terms of your account became locked and the only way to change the interest rate is to refinance or complete a loan modification. We found no evidence that your signature was forged.

We have enclosed the following documents signed by you at closing:

- Mortgage
- Initial Interest℠ Adjustable Rate Note
- Federal Truth-in-Lending Disclosure Statement
- Housing and Urban Development (HUD-1) Settlement Statement
- Uniform Residential Loan Application
- Adjustable-Rate Mortgage Loan Program Disclosure

We've determined your account was handled properly and no corrections are needed as no error has occurred. If you have any questions or would like to request documents about the information in this letter, I'm here to help. You may reply to me at the return address on this letter, or you may reach me directly at the telephone number in the "Going forward" section at the close of this letter.

## Going forward

We value your feedback and appreciate the time and effort you took to contact us. It's been my goal to fully address the concerns you've brought to our attention.

Krichevsky
July 22, 2019
Page 3

If you have any questions, I'm here to help. You may reach me at 1-800-853-8516, extension
1335621004. I am available to assist you Monday through Friday, 7:00 a.m. to 3:30 p.m. Central
Time. If you require immediate assistance and I am unavailable, other representatives are
available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m.
Central Time.

Sincerely,

*Kelly Duncan*

Kelly Duncan
Executive Resolution Specialist
Customer Care and Recovery Group

CC/Enc.:      Consumer Financial Protection Bureau
              Complaint ID: 190611-4140993

PLEASE NOTE: This notice is being provided for informational purposes only. As a result of at least one bankruptcy
case filing that included the above referenced account, Wells Fargo Home Mortgage is NOT attempting in any way
to violate any provision of the United States Bankruptcy Code or to collect a debt (deficiency or otherwise) from
any customer(s) who is impacted by an active bankruptcy case or has received a discharge, where the account was
not otherwise reaffirmed or excepted from discharge. THIS IS NOT A BILL OR A REQUEST FOR PAYMENT AS TO
THESE CUSTOMER(S).

9d4/co8471694/8394590/cl708

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

After Recording Return To:

SMI - FAIRMONT FUNDING LTD
ATTENTION: LANIECE LAMELL
3910 KIRBY DRIVE
SUITE 300
HOUSTON, TEXAS 77098

LOAN NO.:   CS1848

**CERTIFIED TRUE COPY**
**ORIGINAL SENT FOR RECORDING**

ESCROW NO.:

TITLE NO.:

PARCEL NO.: _____ [SPACE ABOVE THIS LINE FOR RECORDING DATA] —

MIN NO.:   100294800012018483          **MORTGAGE**

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated <u>DECEMBER    14  , 2005</u>, together with all Riders to this document, will be called the "Security Instrument."

(B). "Borrower.".
MICHAEL KRICHEVSKY,
_____
_____
_____
_____
whose address is   <u>120 OCEANA DR W</u>
<u>BROOKLYN, NY 11235</u>
sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender."
FAIRMONT FUNDING LTD, A NEW YORK CORPORATION
_____
will be called "Lender." Lender is a corporation or association which exists under the laws of <u>NEW YORK</u>                    Lender's address is _____
<u>1333 60TH STREET 2ND FLOOR; BROOKLYN, NEW YORK 11219</u>

(E) "Note." The note signed by Borrower and dated  <u>DECEMBER    14  ,    2005</u> will be called the "Note." The Note states that I owe Lender
<u>SEVEN HUNDRED FORTY SEVEN THOUSAND SIX HUNDRED AND 00/100</u>
Dollars (U.S. $    747,600.00    ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by <u>JANUARY    01    2036</u>.

(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

Initials  _M_ _K_ ____ ____

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3033  1/01
*DOCPREP SERVICES, INC.* FORM - MMTGNY1-3133                Page 1 of 17
                                 **ORIGINAL**

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider        [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider                [ ] Planned Unit Development Rider  [ ] Assumption Rider
[ ] 1-4 Family Rider             [ ] Biweekly Payment Rider          [ ] Inter Vivos Trust Rider
[ ] Other(s) [specify]:

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation or sale to avoid condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

LOAN NO.: ▉                                    Initials _μ_ / _K_ ___ ___ ___

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        Form 3033 1/01
*DOCPREP SERVICES, INC.* FORM - MMYGNY-NY3D                Page 2 of 17
                                        ORIGINAL

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if neccesary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (soley as nominee for Lender and Lender's succesors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at : __4221 ATLANTIC AVENUE__
[Street]

__BROOKLYN__ , New York __11224__
[City, Town or Village]     [Zip Code]

This Property is in __KINGS__ County. It has the following legal description:
SEE ATTACHED LEGAL DESCRIPTION

ADJUSTABLE RATE RIDER(S) ATTACHED HERETO AND MADE A PART HEREOF

PARCEL NO.:

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property";

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

LOAN NO.: [redacted]                    Initials _M_ _M_ ___ ___

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3033  1/01
*DOCPREP SERVICES, INC.*  FORM - MMTGNY1-3133          Page 3 of 17
ORIGINAL

**Schedule A Description**

Title Number [REDACTED]                                        Page    **1**

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, known and designated on map entitled "Map of Section A Norton Point" made by Font and Beach surveyors, 1894 and filed in the Office of Register Kings County, April 20, 1894, #351-352-353 in Block #7 of said map and described with reference to the private road, laid down on said map as follows:

BEGINNING at a point on the Northerly line of Atlantic Avenue on said map, 160 feet Westerly from the intersection of said Northerly line with the Westerly side of Beach 42nd Street;

RUNNING THENCE Westerly along the Northerly line of Atlantic Avenue as it curves to the Westerly line of lot 351 on said map;

THENCE Northerly along the Westerly line of lot 351 (which line is on a radius of the concentric curves of Atlantic and Surf Avenues); 100 feet to the middle line of block between Atlantic and Surf Avenues;

THENCE Easterly along the middle line of the block as it curves, 60 feet to the Westerly line of lot 354 on said map;

THENCE Southerly at right angles to Atlantic Avenue and along the Westerly line of said lot #354, 100 feet to the point or place of BEGINNING.

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all proceeds of insurance for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or. (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not accepts waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

*First*, to pay interest due under the Note;

LOAN NO.: ███████              Initials _M_ _R___ ___ ___ ___

*Next,* to pay principal due under the Note; and

*Next,* to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due. Any remaining amounts will be applied as follows:

*First,* to pay any late charges;

*Next,* to pay any other amounts due under this Security Instrument; and

*Next,* to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me:

*First,* to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full;

*Next,* to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows:

*First,* to any prepayment charges; and

*Next,* as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3.    **Monthly Payments For Taxes And Insurance.**

(a) **Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a loss reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items":

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this SecurityInstrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien";

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Funds." I will pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the

**LOAN NO.:** ▮▮▮▮    Initials *M. K*

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS            Form 3033  1/01
*DocPrep Services, Inc.*  FORM - MXNYGNY3-3133                     **Page 5 of 17**
                                                                  **ORIGINAL**

amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Funds in an amount sufficient to permit Lender to apply the Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations. Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Lender will use the Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Funds. That accounting will show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Funds, or (2) Applicable Law requires Lender to pay interest on the Funds.

(c) Adjustments to the Funds. Under Applicable Law, there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Funds.

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "person" means any individual, organization, governmental authority or other party.

LOAN NO.: ▮▮▮▮                    Initials _M_ _R_ ___ ___ ___

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3033 1/01
DOCPREP SERVICES, INC.  FORM - MMTGNY1-3033                    Page 6 of 17
                                            ORIGINAL

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "standard mortgage clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a standard mortgage clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

LOAN NO.: ▆▆▆▆                                  Initials _M_ _K_ __ __ __

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3033 1/01
DOCPREP SERVICES, INC.  FORM - MMTGNY1-3133          Page 7 of 17
ORIGINAL

The amount paid by the insurance company for loss or damage to the Property is called "proceeds." Unless Lender and I otherwise agree in writing, any proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such insurance proceeds will be applied in the order provided for in Section 2. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any insurance proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.  **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation (as described in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

LOAN NO.:  ▆▆▆▆                                    Initials  *M*  *K*  ___  ___

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3033  1/01
*DocPrep Services, Inc.*  FORM - 30MTGNY3-3333              Page 8 of 17
                                                     ORIGINAL

**(b) Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights In The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, proceedings which could give a person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "fee title") to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

**LOAN NO.:** ▓▓▓▓                    Initials _Ní_ _ll_ _____ _____ _____

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3033  1/01
DOCPREP SERVICES, INC.  FORM - MMTGNYL-3133                 Page 9 of 17
                                                ORIGINAL

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "loss reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The loss reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the loss reserve. Lender can no longer require loss reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance loss reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between premiums, or the Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the

LOAN NO.: ██████                              Initials _M_ _K_ _ _ _ _ _ _

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3033  1/01
*DOCPREP SERVICES, INC.*  FORM - *MSGNY-3133*                    Page 10 of 17
                                                 ORIGINAL

work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date the Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required immediate payment in full. The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

(a). Borrower's Obligations. Lender may allow me, or a person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

LOAN NO.: ▮▮▮▮▮▮                                          Initials _AL_ _U_ ___ ___ ___

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3033 1/01
DOCPREP SERVICES, INC. FORM - MMTGNY1-3133                    Page 11 of 17
ORIGINAL

**(b) Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make immediate payment in full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: a) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument; (b) that person is not personally obligated to pay the Sums Secured; and (c) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified

**LOAN NO.:** ▮▮▮▮                                    Initials _MK_ _LK_ ___ ___ ___

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3033 1/01
DOCPREP SERVICES, INC.  FORM - MMTGNYI-3113                    Page 12 of 17
                                                ORIGINAL

procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) 5 days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

LOAN NO.: ████    Initials _M_ _K_ ___ ___ ___

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    Form 3033 1/01
*DOCPREP SERVICES, INC. FORM - MSNTGNY1-3133*    Page 13 of 17
ORIGINAL

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not

LOAN NO.: ▇▇▇▇▇                                    Initials _M_ _U_ ___ ___

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3033 1/01
*DocPrep Services, Inc.* FORM - MMTGNY1-3133                  Page 14 of 17
                                                    ORIGINAL

do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured or if another default occurs under this Security Instrument.

Lender may require immediate payment in full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay when due the Sums Secured or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

LOAN NO.:                                    Initials _____ 

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        Form 3033 1/01
DOCPREP SERVICES, INC. FORM - MMYGNY3-3133        Page 15 of 17
ORIGINAL

(4) That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and

(6) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund; " and (b) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

☐ This Security Instrument covers real property improved, or to be improved, by a 1 or 2 family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than 6 residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

LOAN NO.: ███    Initials _M_ _K_ ___ ___ ___ ___

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    Form 3033  1/01
DOCPREP SERVICES, INC.  FORM - RENTCNY1-3133    Page 16 of 17
ORIGINAL

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____    _____ (Seal)
                              MICHAEL KRICHEVSKY        -Borrower

_____    _____ (Seal)
                                                        -Borrower

_____    _____ (Seal)
                                                        -Borrower

                             _____ (Seal)
                                                        -Borrower

                             _____ (Seal)
                                                        -Borrower

LOAN NO.:   CS1848

                             _____ (Seal)
                                                        -Borrower

——————————————— [Space Below This Line For Acknowledgment] ———————————————

**STATE OF NEW YORK**

COUNTY OF    King        } SS:

On the  14th  day of  December           , in the year  2005  , before me, the undersigned, personally appeared
MICHAEL KRICHEVSKY
_____

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted or the person upon behalf of which the individual(s) acted, executed the agreement.

Sworn to before me this     14th
Day of       December          2005
                                                    AVROHOM BIRNBAUM
                                                    Notary Public State of NY
                                                    No. 01BI5047128
_____                           Qualified in Kings County
Notary Public                                       Expires 07/24/2009

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        Form 3033  1/01
*DOCPREP SERVICES, INC.* FORM - MMTCNY1-3133          Page 17 of 17
                                        **ORIGINAL**

# INITIAL INTEREST℠ ADJUSTABLE RATE RIDER
### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)

THIS INITIAL INTEREST ADJUSTABLE RATE RIDER is made this ___14TH___ day of __DECEMBER__, __2005__, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Initial Interest Adjustable Rate Note (the "Note") to __FAIRMONT FUNDING LTD, A NEW YORK CORPORATION__

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
__4221 ATLANTIC AVENUE__
__BROOKLYN, NEW YORK 11224__

#### (Property Address)

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of ___6.500___ %. The Note provides for interest only payments until the first fully amortizing principal and interest payment due date (the "First P&I Payment Due Date"), which is the first day of __FEBRUARY__, __2011__.

The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Interest Change Dates

The interest rate I will pay may change on the first day of __JANUARY__, __2011__, and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding __TWO AND 250/1000__ percentage point(s) (___2.250___ %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

LOAN NO.: ▓▓▓          Initials _U_ _K_ ___ ___ ___

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER - 1-Year LIBOR Index (Assumable after Initial Period) -Single Family-
Freddie Mac UNIFORM INSTRUMENT
*DOCPREP SERVICES, INC.* FORM - MSS137N-SMS          Page 1 of 3          Form 5137 7/05

**ORIGINAL**

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than __11.500__ % or less than __2.250__ %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than __TWO AND 000/1000__ percentage point(s) (__2.000__ %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than __11.500__ %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.  UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

LOAN NO.: ▮▮▮▮    Initials _M_ _K_

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER - 1-Year LIBOR Index (Assumable after Initial Period) -Single Family- Freddie Mac UNIFORM INSTRUMENT
*DOCPREP SERVICES, INC.* FORM - MS5137N-8405                Page 2 of 3                Form 5137  7/05
ORIGINAL

**2. AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)            _____ (Seal)
                          -Borrower                                    -Borrower
**MICHAEL KRICHEVSKY**

_____ (Seal)            _____ (Seal)
                          -Borrower                                    -Borrower

(Sign Original Only)

LOAN NO.: ███████
MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER - 1-Year LIBOR Index (Assumable after Initial Period) -Single Family-
Freddie Mac UNIFORM INSTRUMENT
*DOCPREP SERVICES, INC.  FORM - MS513TN-8605*            **Page 3 of 3**            **Form 5137  7/05**
                                                         **ORIGINAL**

3530716

# INITIAL INTEREST℠ ADJUSTABLE RATE NOTE
### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

_DECEMBER___ __14__ , _2005_     __BROOKLYN_____ , __NEW YORK___
    **[Date]**                          **[City]**                 **[State]**

__4221 ATLANTIC AVENUE__
__BROOKLYN, NEW YORK 11224__

**[Property Address]**

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ ___747,600.00____ (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is _____
__FAIRMONT FUNDING LTD, A NEW YORK CORPORATION_____ .

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of ___6.500___ %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month on the first day of the month beginning on __FEBRUARY_____ __01__ , __2006__ . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on __JANUARY____ __01__ , __2036__ , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at __1333 60TH STREET, 2ND FLOOR_____
__BROOKLYN, NEW YORK 11219_____
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $___4,049.50____ . This amount may change in accordance with subsection (C) below.

### (C) Monthly Payment Changes

The First P&I Payment Due Date is the first day of __FEBRUARY_____ , __2011__ .

LOAN NO.: ▮▮▮▮▮▮
MIN NO.: ▮▮▮▮▮▮▮▮▮▮

Initials _AL_ _IC_ ___ ___ ___ ___

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year LIBOR Index (Assumable after Initial Period) - Single Family -
Freddie Mac UNIFORM INSTRUMENT
*DOCPREP SERVICES, INC.* FORM - MS5537N-8604

Page 1 of 5
ORIGINAL

Form 5537  5/04 (rev. 7/05)

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Beginning with the First P&I Payment Due Date my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note.

Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Interest Change Dates

The interest rate I will pay may change on the first day of ___**JANUARY**___ , __**2011**__ , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding _____ **TWO AND 250/1000** _____ percentage point(s) ( ___**2.250**___ %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than __**11.500**__ % or less than ____**2.250**__ %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than ___**TWO AND 000/1000**___ percentage point(s) ( ___**2.000**___ %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than ___**11.500**__ %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

LOAN NO.: ▮▮▮▮  ▮▮▮▮▮▮▮

Initials __*M*__ __*LC*__ ____ ____ ____ ____

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year LIBOR Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT

DOC PREP SERVICES, INC:  FORM - MS5537N-3604

Page 2 of 5
ORIGINAL

Form 5537  5/04 (rev. 7/05)

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment.  If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment.  After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of ___15___ calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be _____2.000_____ % of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that.  I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Initials  *M  ll*

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE – 1-Year LIBOR Index (Assumable after Initial Period) – Single Family – Freddie Mac UNIFORM INSTRUMENT

*DOCPREP SERVICES, INC.  FORM - MSS537N-8404*          **Page 3 of 5**          Form 5537  5/04 (rev. 7/05)
ORIGINAL

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

(A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

LOAN NO - ▮▮▮▮▮▮▮▮▮

Initials ▮▮ ▮▮

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year LIBOR Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT

*DOCPREP SERVICES, INC.* FORM - MS5537N-8604

Page 4 of 5
ORIGINAL

Form 5537 5/04 (rev. 7/05)

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MICHAEL KRICHEVSKY          -Borrower

PAY TO THE ORDER OF Wells Fargo Bank    N.A.
WITHOUT RECOURSE                (Seal)
                                -Borrower
BY: _____
Steven Rimmer, Sr. Vice President
Fairmont Funding, Ltd.

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

(Sign Original Only)

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year LIBOR Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT
DOCPREP SERVICES, INC. FORM - MS5537N-8604     Page 5 of 5     Form 5537 5/04 (rev. 7/05)
LOAN NO.: [redacted]     ORIGINAL     MIN NO.: 100294800012018483